**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| GREENACTION FOR HEALTH AND ENVIRONMENTAL JUSTICE, | Case No. 3:24-cv-3899-VC |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| v. | |
| UNITED STATES DEPARTMENT OF THE NAVY et al., | Date:      January 23, 2025 |
| | Time:      10:00 a.m. |
| Defendants. | Location: Courtroom 4 – 17th Floor |
| | Judge:     Hon. Vince Chhabria |

DATED:  November 1, 2024

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

 */s/ David Mitchell*

LUCY E. BROWN
DAVID D. MITCHELL
Environmental Defense Section

*Counsel for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 2

I.   Statutory and regulatory background............................................................ 2

    A.   CERCLA response authority and the National Contingency
        Plan ................................................................................................. 2

    B.   Selecting removal and remedial actions and conducting
        five-year reviews............................................................................ 3

    C.   The CERCLA administrative record ........................................... 4

II.  Factual background........................................................................................ 5

    A.   Hunters Point history, CERCLA radiological response
        actions, and retesting.................................................................... 5

    B.   Final remedial actions, public participation, RODs, and
        recent five-year reviews ............................................................... 7

III. The First Amended Complaint...................................................................... 8

STANDARD OF REVIEW ....................................................................................... 8

ARGUMENT ............................................................................................................. 9

I.   Plaintiff's first claim is not ripe and, as to EPA, the claim is not
    cognizable ................................................................................................... 10

    A.   Plaintiff's claim that the Navy is in violation of the work
        plans is not ripe ........................................................................... 10

    B.   Plaintiff's claim that EPA "failed to enforce the FFA" is
        not cognizable ............................................................................. 12

II.  Plaintiff's second claim is moot.................................................................. 13

III. Plaintiff's third claim should be dismissed because the Navy and
    EPA have completed their nondiscretionary duties under CERCLA ................... 14

    A.   The Navy and EPA satisfied the nondiscretionary duty to
        select remedial actions under CERCLA .................................... 14

  B.  The Navy satisfied the nondiscretionary duty to establish an administrative record ....................................................................................15

IV. Plaintiff's fourth claim should be dismissed for several reasons...........................17

  A.  Plaintiff's citizen-suit challenges to the remedial actions and all actions prior are barred by the statue of limitations at 28 U.S.C. § 2401(a) ....................................................................18

  B.  Plaintiff's allegations regarding the fourth and fifth five-year reviews fail to state a claim.................................................19

  C.  Plaintiff has not stated a claim based on alleged violations of EPA guidance ..........................................................................20

V. Plaintiff's fifth claim should be dismissed because 42 U.S.C. § 9613(j)(2) does not provide a cause of action.....................................................21

VI. The sixth claim should be dismissed ....................................................................22

  A.  Claims cognizable under CERCLA's citizen-suit provision cannot be brought under the APA..............................................22

  B.  The only final agency actions Plaintiff identifies are selection of and deviations from the removal and remedial actions ....................................................................................22

  C.  42 U.S.C. § 9613(h) bars review of the 2006 removal action selected.............................................................................23

  D.  Plaintiff's challenge to the remedial actions selected is barred by the statute of limitations at 28 U.S.C. § 2401(a) ......................24

VII. The FAC does not state a claim for parcel F or violations not specifically alleged..............................................................................25

CONCLUSION.................................................................................………..25

# TABLE OF AUTHORITIES

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................................................9

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ....................................................................................................9, 25

*Bennett v. Spear,*
  520 U.S. 154 (1997) ...................................................................................12, 13, 14, 23

*Benzman v. Whitman,*
  523 F.3d 119 (2d Cir. 2008) ..........................................................................................13

*Blantz v. Calif. Dep't of Corr. & Rehab.,*
  727 F.3d 917 (9th Cir. 2013) ........................................................................................17

*Church of Scientology of Cal. v. United States,*
  506 U.S. 9 (1992) .....................................................................................................13, 14

*Citizens for Better Forestry v. Dep't of Agric.,*
  341 F.3d 961 (9th Cir. 2003) ........................................................................................12

*City of Colton v. Am. Promotional Events, Inc.-West,*
  614 F.3d 998 (9th Cir. 2010) ..........................................................................................3

*Clarke v. Pac. Gas & Elec. Co.,*
  501 F. Supp. 3d 774 (N.D. Cal. 2020) ..........................................................................18

*Cook Inlet Treaty Tribes v. Shalala,*
  166 F.3d 986 (9th Cir. 1999) ........................................................................................14

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.,*
  144 S. Ct. 2440 (2024) ............................................................................................18, 24

*Ctr. for Biological Diversity v. EPA,*
  847 F.3d 1075 (9th Cir. 2017) ......................................................................................18

*Ctr. for Biological Diversity v. Esper,*
  958 F.3d 895 (9th Cir. 2020) ........................................................................................22

*Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.,*
  36 F.4th 850 (9th Cir. 2022),
  *cert. denied*, 143 S. Ct. 2582 (2023) ............................................................................11

*Fort Ord Toxics Project, Inc. v. Cal. EPA*,
   189 F.3d 828 (9th Cir. 1999) ..................................................................3, 24

*Frey v. EPA*,
   751 F.3d 461 (7th Cir. 2014) ...............................................................14, 15

*Giovanni v. United States Dep't of the Navy*,
   906 F.3d 94 (3d Cir. 2018)...........................................................................24

*Godecke v. Kinetic Concepts, Inc.*,
   937 F.3d 1201 (9th Cir. 2019) .......................................................................9

*Guam v. United States*,
   593 U.S. 310 (2021)......................................................................................2

*Gunn v. Minton*,
   568 U.S. 251 (2013) .....................................................................................8

*Heckler v. Chaney*,
   470 U.S. 821 (1985).....................................................................................13

*Leite v. Crane Co.*,
   749 F.3d 1117 (9th Cir. 2014) .......................................................................8

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).....................................................................................10

*McClellan Ecological Seepage Situation v. Perry*,
   47 F.3d 325 (9th Cir. 1995) ....................................................................23, 24

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
   523 U.S. 726 (1998)................................................................................11, 12

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
   538 U.S. 803 (2003)......................................................................................10

*Santa Clarita Valley Water Agency v. Whittaker Corp.*,
   99 F.4th 458 (9th Cir. 2024) ..........................................................................3

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) .......................................................................8

*Scott v. Breeland*,
   792 F.2d 925 (9th Cir. 1986) .........................................................................8

*Sierra Club v. Johnson*,
No. C 08-01409 WHA, 2009 WL 2413094 (N.D. Cal. Aug. 5, 2009) ..................................... 15

*Sierra Club v. Whitman*,
268 F.3d 898 (9th Cir. 2001) ................................................................................................ 13

*S. Cal. All. of Publicly Owned Treatment Works v. EPA*,
8 F.4th 831 (9th Cir. 2021) ............................................................................................. 22, 23

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ..................................................................................... 9, 10, 16

*Stavrianoudakis v. U.S. Fish & Wildlife Serv.*,
108 F.4th 1128 (9th Cir. 2024) ............................................................................................. 10

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ................................................................................................................ 13

*St. Clair v. Chico*,
880 F.2d 199 (9th Cir. 1989) ................................................................................................. 8

*Texas v. United States*,
523 U.S. 296 (1998) .............................................................................................................. 10

*United Aeronautical Corp. v. United States Air Force.*,
80 F.4th 1017 (9th Cir. 2023) ............................................................................................... 22

*United States v. Sterling Centrecorp Inc.*,
977 F.3d 750 (9th Cir. 2020) ................................................................................................ 21

*United States v. Chapman*,
146 F.3d 1166 (9th Cir. 1998) .............................................................................................. 21

*United States v. United Nuclear Corp.*,
610 F. Supp. 527 (D.N.M. 1985) ......................................................................................... 23

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ................................................................................................. 9

*United States v. Sensient Colors, Inc.*,
649 F. Supp. 2d 309 (D.N.J. 2009) ...................................................................................... 16

*United States v. W.R. Grace & Co.*,
429 F.3d 1224 (9th Cir. 2005) ............................................................................................... 2

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ........................................................................8

**STATUTES**

5 U.S.C. § 704 ..........................................................................................22

28 U.S.C. § 2401(a) ..............................................................................18, 24

42 U.S.C. § 9601(23)-(25) ............................................................................2

42 U.S.C. § 9604(a) ......................................................................................2

42 U.S.C. § 9605(a) ......................................................................................2

42 U.S.C. § 9605(a)(8) ..................................................................................2

42 U.S.C. § 9613(h) ................................................................................23, 24

42 U.S.C. § 9613(j)(2) ..................................................................................21

42 U.S.C. § 9613(k)(1) ..........................................................................4, 5, 15

42 U.S.C. § 9613(k)(2)(B) ........................................................................4, 16

42 U.S.C § 9620 ..........................................................................2, 5, 12, 24

42 U.S.C § 9620(e) ..................................................................................3, 24

42 U.S.C. § 9620(e)(4)(A) ..............................................................................4

42 U.S.C. § 9621(a) ......................................................................................3

42 U.S.C. § 9621(b)(1) ................................................................................14

42 U.S.C. § 9621(c) ......................................................................4, 7, 13, 19

42 U.S.C. § 9621(d)(1) ..................................................................................3

42 U.S.C. § 9659(a) ....................................................................................22

42 U.S.C. § 9659(a)(1) ................................................................................12

42 U.S.C. § 9659(a)(2) ..................................................................12, 13, 14, 15

42 U.S.C. § 9659(c) ....................................................................................22

## FEDERAL RULES OF CIVIL PROCEDURE

Federal Rules of Procedure 12(b)(1) and (b)(6) ........................................................2, 13

## CODE OF FEDERAL REGULATIONS

40 C.F.R. Part 300....................................................................................................2

40 C.F.R. § 300.410 .................................................................................................3

40 C.F.R. §§ 300.410-.415.......................................................................................23

40 C.F.R. § 300.415(a)(1) ........................................................................................3

40 C.F.R. § 300.415(b)(4).........................................................................................3

40 C.F.R. § 300.415(n)(4).........................................................................................3

40 C.F.R. § 300.425 .................................................................................................2

40 C.F.R. § 300.430(d) .........................................................................................3, 19

40 C.F.R. § 300.430(e)(1).........................................................................................3

40 C.F.R. § 300.430(e)(2).........................................................................................3

40 C.F.R. § 300.430(e)(2)(i) .................................................................................3, 19

40 C.F.R. § 300.430(e)(9).........................................................................................3

40 C.F.R. § 300.430(f).............................................................................................23

40 C.F.R. § 300.430(f)(1) .........................................................................................3

40 C.F.R. § 300.430(f)(1)(ii).....................................................................................4

40 C.F.R. § 300.430(f)(1)(ii)(A) ...............................................................................3

40 C.F.R. § 300.430(f)(1)(ii)(D) ...............................................................................3

40 C.F.R. § 300.430(f)(2) .........................................................................................4

40 C.F.R. § 300.430(f)(3)-(4) ...............................................................................14, 19

40 C.F.R. § 300.430(f)(3) ...................................................................................16, 17

40 C.F.R. § 300.430(f)(3)(i)..................................................................................................4

40 C.F.R. § 300.430(f)(3)(i)(C)............................................................................................17

40 C.F.R. § 300.430(f)(3)(i)(F).............................................................................................4

40 C.F.R. § 300.430(f)(4).......................................................................................................4

40 C.F.R. § 300.430(f)(4)(ii)...........................................................................................4, 19

40 C.F.R. § 300.430(f)(5).......................................................................................................4

40 C.F.R. § 300.430(f)(5)(iii)(C)....................................................................................4, 19

40 C.F.R. § 300.435(c)(2)(i)...................................................................................................4

40 C.F.R. § 300.435(c)(2)(ii)..................................................................................................4

40 C.F.R. § 300.800(a).....................................................................................................4, 15

40 C.F.R. § 300.805(a)............................................................................................................5

40 C.F.R. § 300.805(a)(4)........................................................................................................5

40 C.F.R. § 300.805(c)...............................................................................................5, 15, 16

40 C.F.R. § 300.810(a)...........................................................................................................15

40 C.F.R. § 300.810(c)............................................................................................................5

40 C.F.R. § 300.810(d)............................................................................................................5

40 C.F.R. § 300.815(b)....................................................................................................4, 16

40 C.F.R § 300.825(c)...........................................................................................................17

**FEDERAL REGISTER**

Exec. Order No. 12580, 52 Fed. Reg. 2923 (Jan. 23, 1987)..................................................2

54 Fed. Reg. 48184 (Nov. 21, 1989) .....................................................................................5

63 Fed. Reg. 69032 (Dec. 15, 1998) ......................................................................................5

64 Fed. Reg. 16351 (Apr. 5, 1999) ................................................................................................5

## INTRODUCTION

Since 1984, the Department of the Navy ("Navy") has been responding to contamination resulting from over 100 years of industrial activities at the former Hunters Point Naval Shipyard ("Hunters Point").  In 1992, the Navy, the Environmental Protection Agency ("EPA"), and the State of California entered a Federal Facilities Agreement ("FFA") governing the Navy's response actions at Hunters Point under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").  After performing remedial investigations and feasibility studies, the Navy selected remedial actions for the parcels at Hunters Point at issue in this case between 1995 and 2014.  The Navy's implementation of those remedies continues today, including the completion of five-year reviews to assess the performance of the remedies.

In addition to the ongoing remedial actions, since 2006, the Navy has been responding to radiological contamination under its CERCLA authority to conduct a removal action to address immediate threats to human health and the environment.  Unfortunately, the Navy's efforts were disrupted in the 2010s by pervasive fraudulent radiological testing and reporting by a Navy contractor, requiring retesting of the affected parcels under work plans approved by EPA and the California Departments of Toxic Substances Control and Public Health.

Now, ten years after the Navy selected the most recent remedial action relevant to this case, Plaintiff seeks to challenge the remedial investigations and feasibility studies completed, the remedial actions selected, and the Navy's radiological removal action, ongoing retesting work, and five-year reviews.  The First Amended Complaint ("FAC"), ECF No. 16, asserts a litany of alleged violations of the FFA and other unlawful actions by the Navy and EPA under CERCLA.  But Plaintiff fails to allege a valid claim.  The challenges to remedial actions—pleaded as violations of nondiscretionary duties under CERCLA, violations of the FFA, and

Administrative Procedure Act claims—are not cognizable or come far too late.  And the rest of

Plaintiff's claims also fail.  The challenge to the Navy's CERCLA removal action is barred.  The

challenges to ongoing retesting of certain parcels are not ripe.  And with the completion of the

latest five-year review of the remedial actions, Plaintiff's only cognizable nondiscretionary duty

claims regarding five-year reviews are moot.  For these reasons, Federal Defendants request that

the Court dismiss this action under Federal Rules of Procedure ("Rule") 12(b)(1) and (b)(6).

## BACKGROUND

### I.    Statutory and regulatory background

#### A.  CERCLA response authority and the National Contingency Plan

CERCLA is "a comprehensive statutory scheme for responding to certain environmental

hazards." *Guam v. United States*, 593 U.S. 310, 312 (2021).  Section 9604 provides the President

authority to respond to the release or threatened release of a hazardous substance.[1]  42 U.S.C.

§ 9604(a).  CERCLA provides for two types of response actions: removal actions (responses to

immediate threats to human health and the environment) and remedial actions (permanent

remedies for non-immediate threats).  42 U.S.C. § 9601(23)-(25); *United States v. W.R. Grace &*

*Co.*, 429 F.3d 1224, 1227–28 (9th Cir. 2005).  The National Contingency Plan ("NCP")

prescribes the process and requirements for performing CERCLA response actions.  *See* 42

U.S.C. § 9605(a); 40 C.F.R. Part 300.  The National Priorities List identifies facilities of national

importance requiring response actions.  42 U.S.C. § 9605(a)(8); 40 C.F.R. § 300.425.

CERCLA specifically addresses agency response actions at federal facilities.  *See* 42

U.S.C § 9620.  For National Priorities List facilities, federal agencies take remedial action with

---

[1] The President delegated to EPA the authority to conduct response actions not specifically delegated to other agencies and to the Department of Defense authority to respond to releases at its facilities.  Exec. Order No. 12580 § 2(d), (g), 52 Fed. Reg. 2923 (Jan. 23, 1987).

EPA oversight under an FFA.  *See* 42 U.S.C § 9620(e).  The Ninth Circuit has recognized

Section 9620(e) as an independent remedial action authority.  *See Fort Ord Toxics Project, Inc.*

*v. Cal. EPA*, 189 F.3d 828, 834 (9th Cir. 1999).

### B.  Selecting removal and remedial actions and conducting five-year reviews

A removal action begins with a site evaluation to determine whether a removal action is

appropriate.  40 C.F.R. §§ 300.410, .415(a)(1).  Removal actions are designated as "time critical"

or "not-time critical" depending on the extent and type of contamination and whether the

planning period is six months or more.  *Santa Clarita Valley Water Agency v. Whittaker Corp.*,

99 F.4th 458, 479 (9th Cir. 2024).  Non-time critical removals require more planning and public

participation.  *See* 40 C.F.R. § 300.415(b)(4), (n)(4).

In contrast, a remedial action requires significantly more process.  Typically, a remedial

investigation is performed first to adequately characterize the nature and extent of contamination

at the site to develop and evaluate remedial alternatives.  *Id.* § 300.430(d).  Then a feasibility

study is completed to evaluate remedial options.  *Id.* § 300.430(e)(1), (2).  The feasibility study

sets preliminary remediation goals that are modified, as necessary, and finalized when the

remedial action is selected.  *Id.* § 300.430(e)(2)(i).  Remedial alternatives are analyzed based on

nine factors, including protectiveness and cost.  *Id.* § 300.430(e)(9).

At federal facilities on the National Priorities List, the lead agency and EPA jointly select

a remedial action based on the alternatives developed in the feasibility study and present a

proposed plan to the public.  *Id.* § 300.430(f)(1).  Remedial actions must assure protection of

human health and the environment and be cost effective, among other requirements.  42 U.S.C.

§ 9621(a), (d)(1); 40 C.F.R. § 300.430(f)(1)(ii)(A), (D); *see City of Colton v. Am. Promotional*

*Events, Inc.-West*, 614 F.3d 998, 1003 (9th Cir. 2010).  The proposed plan identifies the

alternative that best meets the selection criteria, describes the remedial alternatives analyzed, and proposes a preferred alternative.  40 C.F.R. § 300.430(f)(1)(ii), (f)(2).

CERCLA requires public participation as the lead agency develops the administrative record for the selected remedial action.  *See* 42 U.S.C. § 9613(k)(2)(B).  Under the NCP, the agency must provide, *inter alia*, public notice of the proposed plan, a comment period of at least 30 days, and an opportunity for a public meeting.  40 C.F.R. § 300.430(f)(3)(i).  The agency prepares a summary of significant comments.  *Id.* § 300.430(f)(3)(i)(F).  The lead agency and EPA, or EPA solely in the event of a disagreement, then select a final remedial action and document the decision in a record of decision ("ROD").  *Id.* § 300.430(f)(4), (5); 42 U.S.C. § 9620(e)(4)(A).  If the remedial action ultimately taken differs significantly from the remedy selected in scope, performance, or cost, the agency publishes an "Explanation of Significant Differences" or proposes a ROD amendment depending on whether basic features of the remedial action are altered.  40 C.F.R. § 300.435(c)(2)(i).  ROD amendments require public participation that Explanations of Significant Differences do not.  *Id.* § 300.435(c)(2)(ii).

When remedial actions leave hazardous substances at a site, a review every five years is required "to assure that human health and the environment are being protected by the remedial action being implemented."  42 U.S.C. § 9621(c).  If the lead agency determines that action is appropriate under Section 9604 of CERCLA, "the [lead agency] shall take . . . such action."  *Id.*; *see* 40 C.F.R. § 300.430(f)(4)(ii), (f)(5)(iii)(C).

### C.  The CERCLA administrative record

CERCLA requires the lead agency to establish an administrative record for response actions that includes documents that form the basis for the response action selected, subject to certain exceptions under the NCP.  42 U.S.C. § 9613(k)(1); *see* 40 C.F.R. §§ 300.800(a), .815(b).

The administrative record must be available to the public at or near the site, 42 U.S.C.

§ 9613(k)(1), and may be made available online.  40 C.F.R. § 300.805(c).  It also can be

maintained in a central location, available for public inspection upon request.  *Id.* § 300.805(a).

Documents that contain confidential information must be centrally maintained.  *Id.*

§§ 300.805(a)(4); 300.810(c), (d).

## II.     Factual background

### A.  Hunters Point history, CERCLA radiological response actions, and retesting

The Navy acquired Hunters Point during World War II from Bethlehem Steel and

performed fleet maintenance operations there until 1974.  FAC ¶¶ 30-37.  The Naval

Radiological Defense Laboratory also conducted research at Hunters Point from the 1950s to

1969.  *See id.* ¶ 36.  In 1974, Naval operations ceased at the site.  *Id.* ¶ 37.  The Navy then leased

Hunters Point until 1986.  *Id.*  Industrial activities at Hunters Point resulted in widespread

distribution of contaminants.  *Id.* ¶¶ 31-35.  Between 1984 and 1991, the Navy conducted a

series of base-wide environmental investigations.  63 Fed. Reg. 69032, 69033 (Dec. 15, 1998).

In 1989, EPA added Hunters Point to the National Priorities List.  54 Fed. Reg. 48184 (Nov. 21,

1989).  In 1992, the Navy, EPA, and California entered an FFA under CERCLA Section 9620.

FAC ¶ 55.  Hunters Point is divided into fourteen parcels for response actions.[2]  *Id.* ¶¶ 59-61.

On April 21, 2006, the Navy selected a base-wide removal action for radiological

contamination at Hunters Point.  *Id.* ¶ 71.  The removal action involved surveying radiological

---

[2] The parcels are A-1, A-2, B-1, B-2, C, D-1, D-2, E, E-2, F, G, UC-1, UC-2 and UC-3.  FAC
¶ 61.  Parcel F covers offshore areas, the "UC" parcels are utility corridors, and the rest of the
parcels are land areas that include buildings and structures.  *Id.*  On April 5, 1999, EPA
announced that parcel A was removed from the National Priorities List.  64 Fed. Reg. 16351.

Memorandum of Points and Authorities in Support of Motion to Dismiss
Case No. 3:24-cv-3899-VC                                                          5

contamination, excavating and disposing of soils, and decontaminating or demolishing

structures, among other actions.  Declaration of Danielle Janda ("Janda Decl.") ¶ 7.[3]

      The Navy contracted with Tetra Tech EC, Inc. ("Tetra Tech") to perform radiological

remediation at parcels B, C, D-2, E, G, UC-1, UC-2 and UC3, including implementation of the

2006 removal action selected.  FAC ¶ 134; Janda Decl ¶ 9.  In October 2012, the Navy

discovered discrepancies in Tetra Tech's sampling.  FAC ¶ 135.  Tetra Tech conducted an

investigation and produced a report in April 2014 regarding anomalous samples.  *Id.* ¶ 137.  The

Navy conducted investigations of Tetra Tech's soil and building surveys and found evidence of

widespread fraud.  *Id.* ¶¶ 142-47; Janda Decl. ¶ 9.  EPA reviewed the Navy's draft reports and

identified evidence of even more widespread fraud.  FAC ¶¶ 149-50.  In response, the Navy

planned to conduct investigations at radiologically-impacted soil and building sites starting with

parcel G.  *Id.* ¶¶ 151-55.

      The Navy produced work plans to retest the parcels subject to Tetra Tech's fraud.[4]  *Id.*;

Janda Decl. ¶ 10.  For areas where there were sanitary sewers and storm drain trenches,[5] the

work plans provide for two phases of retesting.  Janda Decl. ¶ 10.  In Phase 1, the Navy will

excavate and characterize 100% of the soil in one third of the trenches at the parcels, with the

trenches selected being those with the highest potential for contamination.  *Id.*  In Phase 2, the

Navy will conduct soil sampling and a complete radiological surface scan of accessible areas of

the parcels.  *Id.*  The Navy will re-excavate 100% of Phase 2 trenches if contamination is

---

[3] The Declaration of Danielle Janda includes excerpts from the 2006 Basewide Removal Memo, which the FAC incorporates by reference.  *See* FAC ¶¶ 71, 81, 88-103.

[4] The allegations in the FAC concern the work plans for parcels B, C, and G, which the FAC incorporates by reference.  *See* FAC ¶¶ 152-54.

[5] The work plans also provide for retesting former building sites and crawl space areas, as well as building investigations, which are not detailed in this motion because the FAC does not contain allegations related to these portions of the work plans.

identified in Phase 1.  *Id.*  The work plans do not impose deadlines for completing the work.  *Id.*  Work is ongoing for parcels B (phase 1), C (phase 1), and G (phase 2).  FAC ¶¶ 152-73; Janda Decl. ¶¶ 11-15.  The Navy has stated it will conduct 100% retesting, excavation, and characterization for all trenches in parcels B and C.  FAC ¶ 171; Janda Decl. ¶ 11.  The Navy is currently performing phase 2 spot retesting and scans in parcel G and will not finalize a decision for phase 2 testing until this work is complete.  Janda Decl. ¶ 15.

### B.  Final remedial actions, public participation, RODs, and recent five-year reviews

The Navy and EPA have jointly selected final remedial actions documented in RODs for all parcels at Hunters Point.  Federal Defendants' Request for Judicial Notice, ECF No. 20, ("RJN"), Nos. 1, 4, 9, 12, 15, 18, 21, 24, 27, 30, 33, 39.  In those RODs, the Navy and EPA found that the remedial actions selected are protective of human health and the environment and cost effective.  RJN Nos. 2, 5, 10, 13, 16, 19, 22, 25, 28, 31, 34, 40.  The most recent ROD relevant to this case was issued in January 2014, [6] and most recent Explanation of Significant Differences was issued in April 2017.  RJN Nos. 1, 4, 9, 12, 15, 18, 21, 24, 27, 30, 33.  For every remedial action selected, the Navy provided the proposed plan for public comment, conducted public meetings, and included responses to significant comments in the RODs.  RJN Nos. 3, 6, 11, 14, 17, 20, 23, 26, 29, 32, 35, 41.

When a remedial action leaves hazardous substances at a site, a review every five years is required "to assure that human health and the environment are being protected by the remedial action being implemented."  42 U.S.C. § 9621(c).  The Navy has completed five five-year

---

[6] The Navy selected the ROD for parcel F in September 2024.  RJN No. 39.  The FAC does not contain any allegations regarding parcel F, and it cannot be considered relevant to the FAC based on the allegations.  Parcel F is the offshore area of Hunters Point, fundamentally different than the other parcels.  FAC ¶ 61.  For the reasons discussed in section VII, the FAC fails to state a claim regarding parcel F.

reviews thus far.  FAC ¶¶ 175-81.  The five-year reviews were published in 2003 (first), 2008 (second), 2013 (third), July 2019 (fourth), and August 2024 (fifth).  *Id.* ¶¶ 175-77, 179, 181.

## III.    The First Amended Complaint

The FAC asserts six claims: (1) violations of the work plans (which Plaintiffs refer to as "retesting agreements") for parcels B, C, and G; (2) violations of the deadlines for issuing five-year reviews; (3) violations of nondiscretionary duties under CERCLA; (4) violations of the FFA; (5) violations of CERCLA's standard for judicial review; and (6) violations of the Administrative Procedure Act.  *See generally* FAC.  The factual allegations focus on: (1) the RODs for the remedial actions selected for parcels B, C, and G, *id.* ¶¶ 107-33; (2) the Navy's work plans concerning retesting at parcels B, C, and G, *id.* ¶¶ 134-73; and (3) the Navy's fourth and fifth five-year reviews, *id.* ¶¶ 174-231.  The FAC also alleges facts related to: (1) the Navy's selection of remediation goals; (2) investigation of radiation background levels; and (3) the CERCLA administrative record.  *Id.* ¶¶ 85-106, 232-37.

## STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."  *Gunn v. Minton*, 568 U.S. 251, 257 (2013) (internal quotation omitted).  A motion to dismiss for lack of jurisdiction under Rule 12(b)(1) can be facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A facial attack "accepts the truth of plaintiff's allegations but asserts that they 'are insufficient on their face . . . .'"  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  For a factual attack, courts need not assume the truth of allegations and may rely on other evidence.  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *St. Clair v. Chico*, 880 F.2d 199, 201 (9th Cir. 1989).  The plaintiff must prove jurisdiction.  *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).

Rule 12(b)(6) permits a court to dismiss a claim for "failure to state a claim upon which relief can be granted." A complaint must allege "enough facts to state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations and internal quotation marks omitted). The plausibility requirement demands "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if a plaintiff fails to allege a viable legal theory or sufficient facts under a viable legal theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019). The court may consider documents incorporated by reference in the complaint or matters subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Courts need not accept the truth of allegations contradicting matters properly subject to judicial notice or by exhibit. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citations omitted). Courts are also not required to accept as true conclusory allegations, unwarranted deductions, or unreasonable inferences. *Id.*

## ARGUMENT

The FAC should be dismissed because the Court lacks jurisdiction over several claims and the FAC fails to adequately plead the other claims. As explained below, Plaintiff's challenges to the remedial actions selected are time-barred, the claim to enforce the work plans for retesting is not ripe, and any cognizable claims related to five-year reviews are moot. Dismissal is appropriate for the remaining claims under Rule 12(b)(6) because Plaintiff fails to include sufficient allegations, or the allegations should not be afforded a presumption of truth

because they are merely conclusory or contradicted by documents incorporated as part of the

FAC or matters subject to judicial notice.  *See Sprewell*, 266 F.3d at 988.  Either way, the result

is the same – this action should be dismissed.

I.    **Plaintiff's first claim is not ripe and, as to EPA, the claim is not cognizable.**

A.    **Plaintiff's claim that the Navy is in violation of the work plans is not ripe.[7]**

The claim that the Navy is in violation of its work plans for retesting at parcels B, C, and

G, FAC ¶¶ 238-49, is not ripe because the Navy's activities under the work plans are ongoing,

and a violation may not arise.  Ripeness is one of the three "irreducible constitutional

minimums" to confer standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  A

claim is not ripe for adjudication if the issues to be adjudicated are contingent upon future events

that may not occur.  *Texas v. United States*, 523 U.S. 296, 300 (1998).  This doctrine "protect[s]

agencies from judicial interference until an administrative decision has been formalized and its

effects felt in a concrete way by the challenging parties."  *Nat'l Park Hosp. Ass'n v. Dep't of

Interior*, 538 U.S. 803, 807–08 (2003).  Plaintiff bears the burden of establishing ripeness.

*Lujan*, 504 U.S. at 560.  "Constitutional ripeness overlaps with the injury-in-fact element of

Article III standing, and 'therefore the inquiry is largely the same: whether the issues presented

are definite and concrete, not hypothetical or abstract.'"  *Stavrianoudakis v. U.S. Fish & Wildlife

Serv.*, 108 F.4th 1128, 1138 (9th Cir. 2024).

Here, Plaintiff's claim that the Navy has violated and "reneged" on the work plans by

failing to perform 100% retesting of all trenches at parcels B, C, and G, FAC ¶ 248, is not ripe

for judicial review.  The Navy's retesting under the work plans is ongoing.  FAC ¶¶ 152-73;

---

[7] Defendants assert this defense under Rule 12(b)(1) and rely on allegations in the FAC and the
Declaration of Danielle Janda in support.

Janda Decl. ¶ 11-15.  Phase 2 spot sampling and scans at Parcel G are underway, and the Navy

has announced it intends to perform 100% retesting of all trenches in phase 2 at parcels B and C.

FAC ¶ 171; Janda Decl. ¶ 11. The Navy will not make a final decision on the scope of phase 2

sampling for parcel G until spot sampling and scans are complete.  Janda Decl. ¶ 15.  The FAC

acknowledges that the Navy is still implementing these work plans and has not completed the

decision-making process for phase 2 retesting.  FAC ¶ 171.  The Court cannot adequately assess

whether a concrete injury has occurred until the Navy has completed its work under the plans,

which is an ongoing administrative process that is subject to change and could be affected by

new information or decision-making.  Plaintiff's alleged injury will not occur, if ever, until the

Navy concludes its work under the plans.

This claim also fails the three-part test for prudential ripeness: "(1) whether delayed

review would cause hardship to the plaintiffs; (2) whether judicial intervention would

inappropriately interfere with further administrative action; and (3) whether the courts would

benefit from further factual development of the issues presented."  *Ohio Forestry Ass'n, Inc. v.

Sierra Club*, 523 U.S. 726, 733 (1998); *see also Env't Def. Ctr. v. Bureau of Ocean Energy

Mgmt.*, 36 F.4th 850, 870 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2582 (2023).  A case is not

prudentially ripe if the action does not create adverse legal effects or inflict practical harm.  *Ohio

Forestry Ass'n*, 523 U.S. at 733-34.

First, Plaintiff has not alleged that it will be prejudiced by a possible delay in resolving

this claim.  The Navy has already stated it plans to perform 100% excavation and retesting of all

trenches for parcels B and C in Phase 2, which is part of the relief Plaintiff seeks.  FAC ¶ 171.

And the Phase 2 sampling in progress at parcel G is subject to evolving circumstances on the

ground.  *See* Janda Decl. ¶ 15.  Even if Plaintiff were to allege costs due to any delayed

adjudication, these costs would not justify premature review. *Ohio Forestry Ass'n*, 523 U.S. at 735. Second, judicial intervention could interfere with ongoing retesting, which is an iterative process that could lead to the additional retesting Plaintiff insists should be ordered now. *See id.* at 733; *Citizens for Better Forestry v. Dep't of Agric.*, 341 F.3d 961, 977 (9th Cir. 2003) (holding that courts should not interfere unless the agency's decision-making is at "an administrative resting place"). Finally, allowing the Navy to complete retesting under the work plans would aid the Court in determining whether the Navy has violated the work plans, if Plaintiff still believes there is a violation. Plaintiff's challenge to the Navy's ongoing implementation of the work plans is contingent on future actions and untethered to imminent or concrete harm. The Court should dismiss this claim against the Navy as unripe.

### B. Plaintiff's claim that EPA "failed to enforce the FFA" is not cognizable.[8]

Plaintiff alleges that "EPA has failed to enforce the FFA, in violation of its oversight role and responsibilities as established by the FFA" and Section 9620. FAC ¶ 249. CERCLA permits two types of citizen suits. One concerns alleged violations of any CERCLA "standard, regulation, condition, requirement, or order." 42 U.S.C. § 9659(a)(1). The other governs an alleged failure to perform a nondiscretionary duty under the Act. *Id.* § 9659(a)(2). As explained above, this claim is not ripe. *See supra* at 10-12. Further, Plaintiff fails to cite any provision of the FFA or CERCLA mandating that EPA exercise its enforcement options under the FFA. In any event, this claim is not viable under CERCLA's citizen suit provision.

Plaintiff's claim is not viable under subsection (a)(1). As the Supreme Court opined in interpreting a nearly identical citizen-suit provision in the Endangered Species Act, "the term 'violation' does not include the [Secretary of Interior's] failure to perform his duties as

---

[8] Defendants assert this defense under Rule 12(b)(6) and rely only on the allegations in the FAC.

administrator of the [authorizing statute]." *Bennett v. Spear*, 520 U.S. 154, 173 (1997).  The

same reasoning applies to CERCLA citizen suits.  *See, e.g.*, *Benzman v. Whitman*, 523 F.3d 119,

133 (2d Cir. 2008) (dismissal of CERCLA citizen-suit claim based on purported

maladministration styled as a "violation").  EPA's alleged failure to "enforce" the FFA under

subsection (a)(1) does not comprise a "violation" of CERCLA.  *See Bennett*, 520 U.S. at 173-74.

And although Plaintiff relies only on subsection (a)(1) of the CERCLA citizen-suit

provision, *see* FAC ¶ 241, Plaintiff also fails to state a nondiscretionary duty claim under

subsection (a)(2).  It is well-established that an agency's decision whether or when to enforce is

within the agency's discretion unless Congress indicates otherwise.  *See Heckler v. Chaney*, 470

U.S. 821, 838 (1985); *Sierra Club v. Whitman*, 268 F.3d 898, 902 (9th Cir. 2001).  There is

nothing in CERCLA that constrains EPA's enforcement discretion.

## II.    Plaintiff's second claim is moot.[9]

The second claim alleges that the Navy failed to complete five-year reviews required

under Section 9621(c) in a timely manner.  FAC ¶¶ 250-59.  This claim is moot: the only relief

the Court could order under Section 9659(a)(2) (complete the reviews) has already taken place.

Article III of the Constitution limits the judiciary to deciding cases and controversies.

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998).  To satisfy Article III standing,

a plaintiff's alleged injury must be redressable by a favorable decision.  *Id.* at 103.  Standing

must then be maintained throughout the lawsuit; if any element is lost, the claim becomes moot.

*Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992).

---

[9] Defendants assert this defense under Rule 12(b)(1) and (b)(6) and rely only on the allegations
in the FAC.

Plaintiff's claim regarding the timeliness of both the fourth and fifth five-year reviews is moot because it is not redressable.  "Mootness can be characterized as the doctrine of standing set in a time frame:  The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."  *Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 989 (9th Cir. 1999) (cleaned up).  This includes the requirement of redressability—if the availability of redress disappears during the case, then standing no longer exists, and the case becomes moot.  *Church of Scientology*, 506 U.S. at 12*.*  The Navy published the fourth five-year review in 2019 and the fifth five-year review was publicly released in August 2024.  FAC ¶¶ 179, 181. Thus, Plaintiff no longer has the "requisite personal interest" in the subject of the litigation to satisfy standing.  *Cook Inlet Treaty Tribes*, 166 F.3d at 989.

## III.    Plaintiff's third claim should be dismissed because the Navy and EPA have completed their nondiscretionary duties under CERCLA.

### A.  The Navy and EPA satisfied the nondiscretionary duty to select remedial actions under CERCLA.[10]

Plaintiff alleges that the Navy and EPA failed to satisfy CERCLA's nondiscretionary duty because the agencies did not select "protective" remedial actions.  FAC ¶¶ 266-70.  While CERCLA does require selection of "remedial action[s] that [are] protective of human health and the environment," 42 U.S.C. § 9621(b)(1), judicial review of nondiscretionary duty claims under CERCLA is limited to assessing whether there was a failure to perform an act or duty under CERCLA "which is not discretionary." 42 U.S.C. § 9659(a)(2); *see Frey v. EPA*, 751 F.3d 461, 469 (7th Cir. 2014).  *Cf. Bennett*, 520 U.S. at 172 (finding nondiscretionary duty review under the Endangered Species Act limited to whether EPA followed proper procedures).  The

---

[10] Defendants assert this defense under Rule 12(b)(6) and rely on allegations in the FAC and Defendants' Request for Judicial Notice (ECF No. 20).

substance of agency decisions that are "at least partly discretionary" are "therefore beyond the scope of these citizen-suit provisions." *Frey*, 751 F.3d at 469; *see also Sierra Club v. Johnson*, No. C 08-01409 WHA, 2009 WL 2413094, at *3 (N.D. Cal. Aug. 5, 2009) (finding no nondiscretionary duty where EPA had a duty to promulgate certain regulations under CERCLA, but the timing of the promulgation was discretionary).

The Navy and EPA selected remedial actions for each parcel after conducting required investigations and finding that the selected remedies are protective of human health and the environment. RJN Nos. 2, 5, 10, 13, 16, 19, 22, 25, 28, 31, 34, 40. Plaintiff does not allege otherwise. *See generally* FAC. This satisfies the Navy's non-discretionary duty. *See Frey*, 751 F.3d at 469. Any challenge to the substance of the selected remedies cannot form the basis for a CERCLA citizen-suit claim under Section 9659(a)(2). *See id.* at 470.

## B. The Navy satisfied the nondiscretionary duty to establish an administrative record.[11]

The Navy is required to "establish an administrative record" that forms the basis for "selection of [its] response action[s]," which "shall be available to the public at or near the facility at issue." 42 U.S.C. § 9613(k)(1); 40 C.F.R. § 300.800(a). CERCLA's implementing regulations describe the types of documents that will "typically, but not in all cases" be found in the administrative record. 40 C.F.R. § 300.810(a). Plaintiff acknowledges that the Navy has established an administrative record but quarrels with its location, completeness, and organization. FAC ¶¶ 236, 271-73. In doing so, Plaintiff fails to allege facts to support a claim that the Navy has not performed a nondiscretionary duty. The Navy maintains the Hunters Point

---

[11] Defendants assert this defense under Rule 12(b)(6) and rely on allegations in the FAC and Defendants' Request for Judicial Notice (ECF No. 20).

administrative record online[12] and at the San Francisco Public Library, RJN No. 42, as permitted under the NCP, 40 C.F.R. § 300.805(c).

In the remaining allegations regarding the record, Plaintiff implicitly claims that inherent in the duty to create an administrative record is the duty to create a record that Plaintiff would agree is organized and complete. FAC ¶¶ 235-36. There is no such requirement in the statutory or regulatory provisions that Plaintiff cites. *Cf. United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 333 (D.N.J. 2009) (rejecting claim challenging how the agency performed its duty to create administrative record). And even if there were, the allegations do not state a claim.

Plaintiff first alleges:

> The Navy failed to provide a public comment period on the selection of the remedial action, including accepting comments, responding to them, and including them in the administrative record as required by 42 U.S.C. § 9613(k)(2)(B) and 40 C.F.R. § 300.815(b).

FAC ¶ 273(a)(ii). This conclusory allegation is insufficient under Rule 8, contradicted by facts subject to judicial notice, and therefore should not be afforded a presumption of truth. *See Sprewell*, 266 F.3d at 988. In fact, the Navy provided every remedial action proposed plan for comment and included responsiveness summaries in the RODs. RJN Nos. 3, 6, 11, 14, 17, 20, 23, 26, 29, 32, 35, 41. Plaintiff does not allege that the Navy failed to do so. *See generally* FAC. Plaintiff appears to believe there is some other public comment requirement under 40 C.F.R. § 300.815(b). But that provision references the "public comment period as specified in [40 C.F.R.] § 300.430(f)(3)," which simply requires a public comment period on the proposed plan.

Plaintiff also alleges:

---

[12] The online administrative record can be accessed at http://administrative-records.navfac.navy.mil/?PN24V63WGTUM4VG4WO

> Since the Navy adopted remedial goals in a removal action rather than a remedial action, it precluded comments to the 2006 remedial goals and prevented commenters from obtaining responses to comments, in violation of § 300.430(f)(3).

FAC ¶ 273(a)(iii).  But Section 400.430(f)(3) does not impose a nondiscretionary duty to allow comment on remedial goals adopted in a removal action; it requires a comment period for the remedial action proposed plan.  40 C.F.R. § 400.430(f)(3)(i)(C).  Thus, this allegation does not plead a nondiscretionary duty claim.

Plaintiff also alleges that the Navy failed to address comments submitted after the comment period.  FAC ¶ 273(b).  Plaintiff correctly notes that the Navy must *consider* comments submitted after the close of the comment period under certain circumstances.  *See* 40 C.F.R § 300.825(c).  But the Navy is not required to "address" any such comments.  *See id.*  Thus, these allegations do not plead a failure to perform a nondiscretionary duty claim.

Even if there were requirements regarding the precise contents of the administrative record, Plaintiff fails to identify a single document that must be in the record that is not.  FAC ¶¶ 235-36, 273(a)(i).  Plaintiff's conclusory allegations are insufficient to state a claim.  *See, e.g.*, *Blantz v. Calif. Dep't of Corr. & Rehab.*, 727 F.3d 917, 926-27 (9th Cir. 2013) (declining to credit unsupported allegation that defendant directed subordinates to take negative employment actions).

## IV.    Plaintiff's fourth claim should be dismissed for several reasons.

The fourth claim alleges that the Navy and EPA violated requirements of the FFA because the FFA requires its implementation in accordance with CERCLA, the NCP, and EPA guidance and policy.  *See* FAC ¶¶ 274-304.  As set forth below, each subpart of the Fourth Claim should be dismissed for failure to state a claim.

A.  **Plaintiff's citizen-suit challenges to the remedial actions and all actions prior are barred by the statute of limitations at 28 U.S.C. § 2401(a).**[13]

The general six-year statute of limitations applies here because CERCLA does not have a statute of limitations for citizen suits.  *See Ctr. for Biological Diversity v. EPA*, 847 F.3d 1075, 1087 (9th Cir. 2017) (applying Section 2401(a) to Endangered Species Act citizen suit).  Section 2401(a) provides: "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."  28 U.S.C. § 2401(a).  A right of action accrues when a plaintiff "has a complete and present cause of action—i.e., when she has the right to file suit . . . ."  *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2450 (2024).  For a citizen suit based on alleged violations, the date of the violation triggers the right to sue.  *See, e.g.*, *Clarke v. Pac. Gas & Elec. Co.*, 501 F. Supp. 3d 774, 786 (N.D. Cal. 2020) (interpreting "when the claim first accrues" in a Clean Water Act citizen suit).  Here, the statute of limitations has run for all alleged violations regarding the five-year reviews issued by 2013.  *See* FAC ¶¶ 175-77.  The fourth and fifth five-year reviews were issued within the six-year statute of limitations.  *See id.* ¶¶ 178-81.

All other alleged violations amount to the same claim: the remedial actions selected at Hunters Point "violate" CERCLA and the NCP.  Plaintiff specifically challenges the remedial actions selected for parcels B, C, and G.  *Id.* ¶¶ 107-33.  But these challenges are years too late.  The amended ROD for parcel B was issued on January 14, 2009.  *Id.* ¶ 117.  The ROD for parcel C was issued on September 30, 2010.  *Id.* ¶ 131.  And the ROD for parcel G was issued on February 18, 2009.  *Id.* ¶ 129.  The statute of limitations expired more than eight years ago.  In fact, the latest that a claim accrued for Plaintiff to challenge a remedial action at issue was in

---

[13] Defendants assert this defense under Rule 12(b)(6) and rely on allegations in the FAC and Defendants' Request for Judicial Notice (ECF No. 20).

April 2017.  The most recent relevant remedial action decision[14] document was the Explanation
of Significant Differences for parcel C issued in April 2017.  RJN Nos. 1, 4, 9, 12, 15, 18, 21, 24,
27, 30, 33.  Thus, the latest time to challenge a remedial action at Hunters Point at issue here was
in April 2023.  Plaintiff commenced this action on June 28, 2024, over a year late.  ECF No. 1.

      Further, the specific violations alleged occurred *before or as part of* selection of remedial
actions and thus are time barred.  The FAC alleges the remedial investigations/feasibility studies
("RI/FS") were inadequate and adopted insufficient remedial goals for all remedial actions.  FAC
¶¶ 281-94.  The RI/FS and selection of preliminary remedial goals occur *before* selection of the
final remedy, *see* 40 C.F.R. § 300.430(d), (e)(2)(i), and final remedial goals are selected as part
of the final remedy, *see id.* § 300.430(e)(2)(i).  Finally, the FAC alleges failure to comply with
public participation requirements for selecting remedial actions.  FAC ¶¶ 300-04.  These
requirements occur *before* the remedial action is selected.  *See* 40 C.F.R. § 300.430(f)(3)-(4).

## B. Plaintiff's allegations regarding the fourth and fifth five-year reviews fail to state a claim.[15]

      Plaintiff alleges violations of five-year review requirements for the Navy's fourth and
fifth five-year reviews.  FAC ¶¶ 182-231, 295-99.  But neither CERCLA nor the NCP require the
Navy to take the specific actions Plaintiff contends.  CERCLA contains a single statutory
requirement regarding five-year reviews:  to review the remedial actions every five years "to
assure that human health and the environment are being protected by the remedial action being
implemented."  42 U.S.C. § 9621(c); 40 C.F.R. § 300.430(f)(4)(ii), (f)(5)(iii)(C).  The FFA

---

[14] The parcel F ROD is not relevant because the FAC does not state a claim regarding parcel F.
*See infra* at 25.

[15] Defendants assert this defense under Rule 12(b)(6) and rely on allegations in the FAC and the
Hunters Point Federal Facilities Agreement, which Plaintiff incorporated as part of the FAC.
FAC ¶¶ 55-56, 279.

restates this obligation; it does not require the actions Plaintiff asserts.  *See* Declaration of David Mitchell ("Mitchell Decl."), Ex. A at 41.[16]

### C. Plaintiff has not stated a claim based on alleged violations of EPA guidance.[17]

Plaintiff's allegations in Section B of the fourth claim, based on "violations" of EPA guidance, also fail to state a claim.  Plaintiff alleges that the Navy violated the FFA because it failed to act "in accordance with" EPA guidance.  FAC ¶ 299.  These guidance documents reflect the significant discretion that agencies exercise during the remedy selection process.  Only claims based on clear violations of the non-discretionary portions of the guidance can form the basis of a claim, and Plaintiff has not alleged any such violations here.

Plaintiff attempts to convert EPA's guidance into mandatory requirements enforceable via a CERCLA citizen-suit by citing the FFA's provision stating that response actions will be conducted "in accordance with" EPA's CERCLA guidance documents.  *Id.* ¶¶ 54-58.  But EPA's guidance documents provide for site-specific flexibility.  For example, the preface to EPA's *Comprehensive Five-Year Review Guidance* provides:

> [This guidance] cannot impose legally-binding requirements on EPA, States, or the regulated community, and *may not apply to a particular situation based upon the circumstances*. Any decisions regarding a particular remedy selection decision will be made based on the statute and regulations, and *EPA decision makers retain the discretion to adopt approaches on a case-by-case basis that differ from this guidance where appropriate.*

Mitchell Decl., Ex. B at 6 (emphasis added).  Acting "in accordance with" EPA's guidance necessarily means that the guidance should be applied based on site- and situation-specific

---

[16] Exhibit page numbers cited are PDF page numbers.

[17] Defendants assert this defense under Rule 12(b)(6) and rely on allegations in the FAC and EPA's *Comprehensive Five-Year Review Guidance*, which Plaintiff incorporated as part of the FAC.  FAC ¶ 299.k.

conditions, and that a decisionmaker retains discretion as to how to best utilize the guidance.

Thus, the FAC fails to state a claim for FFA violations.

### D. Plaintiff's claim that EPA "failed to enforce the FFA" is not viable.[18]

For the reasons stated above, the claim that EPA did not enforce the FFA by not updating

the preliminary remedial goals, FAC ¶ 296, also fails to state a claim.  *See supra* at 12-13.  No

portion of the FFA limits EPA's enforcement discretion.

### V.    Plaintiff's fifth claim should be dismissed because 42 U.S.C. § 9613(j)(2) does not provide a cause of action.[19]

The fifth claim asserts "violations of 42 U.S.C. § 9613(j)(2)," which Plaintiff alleges are

"Actions That Were Arbitrary, Capricious, and Not in Accordance with Law."  FAC ¶¶ 305-09.

Section 9613(j)(2) provides:

> In considering objections raised in any judicial action under this chapter, the court shall uphold the President's decision in selecting the response action unless the objecting party can demonstrate, on the administrative record, that the decision was arbitrary and capricious or otherwise not in accordance with law.

42 U.S.C. § 9613(j)(2).  This section provides the standard of review for claims under CERCLA

challenging response actions and is not an independent cause of action.  *See id*; *United States v.*

*Sterling Centrecorp Inc.*, 977 F.3d 750, 759 (9th Cir. 2020).  This standard applies to *all* such

challenges brought under CERCLA.  *See, e.g.*, *Sterling Centrecorp*, 977 F.3d at 759-60

(applying Section 9613(j)(2) standard of review to EPA response action to determine whether

costs were incurred consistent with the NCP in CERCLA cost-recovery claim); *United States v.*

*Chapman*, 146 F.3d 1166, 1170–71 (9th Cir. 1998) (same).  Nothing about Section 9613(j)(2)

evinces Congress' intent to provide a cause of action.  This claim should be dismissed.

---

[18] Defendants assert this defense under Rule 12(b)(6) and rely only on allegations in the FAC.

[19] Defendants assert this defense under Rule 12(b)(6) and rely only on allegations in the FAC.

VI.    **The sixth claim should be dismissed.**

The sixth claim challenges certain actions, to the extent they are discretionary, as arbitrary, capricious, or inconsistent with law under the Administrative Procedure Act ("APA"). FAC ¶¶ 310-19.  As shown below, the sixth claim should be dismissed.

A.  **Claims cognizable under CERCLA's citizen-suit provision cannot be brought under the APA.[20]**

The APA provides a cause of action to review final agency action "for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  The "no other adequate remedy" requirement is a condition of the APA's waiver of sovereign immunity.  *See United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1022 (9th Cir. 2023).  CERCLA's citizen-suit provision provides a private right-of-action to challenge certain actions in violation of a CERCLA requirement and to compel performance of non-discretionary duties.  *See* 42 U.S.C. § 9659(a), (c).  Claims in the FAC that can be brought under CERCLA's citizen-suit provision cannot be brought under the APA.  *See Ctr. for Biological Diversity v. Esper*, 958 F.3d 895, 903 (9th Cir. 2020) (noting APA challenge only available if there is no other basis for judicial relief). This includes the specific and general CERCLA violations that Plaintiff alleges against EPA in paragraphs 313 through 319 of the FAC.  These are CERCLA citizen-suit claims, not APA claims (and they do not allege final agency action, *see infra* at 22-23).

B.  **The only final agency actions Plaintiff identifies are selection of and deviations from the removal and remedial actions.[21]**

Even if Plaintiff could assert an APA claim, "[t]he APA authorizes district courts to review only final agency action."  *S. Cal. All. of Publicly Owned Treatment Works v. EPA*, 8

---

[20] Defendants assert this defense under Rule 12(b)(6) and rely only on allegations in the FAC.

[21] Defendants assert this defense under Rule 12(b)(6) and rely only on allegations in the FAC.

F.4th 831, 836 (9th Cir. 2021).  For an agency action to be final it must: (1) "mark the consummation of the agency's decisionmaking process . . . [a]nd . . . (2) be one by which rights or obligations have been determined, or from which legal consequences will flow."  *Id.* (quoting *Bennett*, 520 U.S. at 177-78).  Selection of the base-wide removal action and the final remedial actions, and deviations through ROD amendments or explanations of differences are the only final agency actions that the FAC identifies.  These are final decision-making points in the CERCLA process that consummate the response action selection process and from which legal consequences flow.  40 C.F.R. §§ 300.410-.415 (removals); 300.430(f) (remedial action selection).  Preliminary investigative and planning steps, like an RI/FS, are not final.  *See United States v. United Nuclear Corp.*, 610 F. Supp. 527, 528 (D.N.M. 1985) (finding RI/FS is not a final agency action).  Thus, Plaintiff cannot challenge actions taken prior to selection of, or later deviations from, the removal action and remedial actions, including challenges to the RI/FSs.

**C.  42 U.S.C. § 9613(h) bars review of the 2006 removal action selected.[22]**

This Court does not have jurisdiction to review under the APA the removal action being implemented at Hunters Point.  Section 9613(h) of CERCLA is a jurisdictional bar to "any challenge to removal or remedial action selected under [Section 9604 of CERCLA]" subject to limited exceptions.  42 U.S.C. § 9613(h).  Section 9613(h) is a blunt withdrawal of jurisdiction that "precludes any challenges to CERCLA Section [96]04 clean-ups, not just those brought under other provisions of CERCLA."  *See McClellan Ecological Seepage Situation v. Perry*, 47

---

[22] Defendants assert this defense under Rule 12(b)(1) and rely on the allegations in the FAC and the Declaration of Danielle Janda in support.

F.3d 325, 328 (9th Cir. 1995).  Section 9613(h) bars challenges to removals conducted by federal

agencies at federal facilities.[23]  *Fort Ord Toxics Project*, 189 F.3d at 834.

Here, the Navy selected the base-wide removal action under its CERCLA Section 9604

authority.  *Id.* ("removal action[s] on a federal property . . . are conducted under [Section 9604's]

authority.").  The Navy is still implementing the removal action.  Janda Decl. ¶ 8; *see* FAC

¶¶ 152-73 (noting Navy's implementation of removal site work plans); *supra* at 10-12.  Thus,

this Court also does not have jurisdiction to review Plaintiff's APA claim insofar as it challenges

the base-wide removal action at Hunters Point.  42 U.S.C. § 9613(h).

### D.  Plaintiff's challenge to the remedial actions selected is barred by the statute of limitations at 28 U.S.C. § 2401(a).[24]

Insofar as Plaintiff could bring an APA claim to challenge remedial actions and any

deviations, it would be time barred under 28 U.S.C. § 2401(a).  The six-year statute of

limitations at Section 2401(a) applies to APA claims and begins to run when injury is suffered

from a final agency action.  *See Corner Post*, 144 S. Ct. at 2450.  The statute of limitations has

long passed here.  Plaintiff has existed for more than 25 years, FAC ¶ 22, so any alleged injury

would have occurred when parcel RODs or Explanations of Significant Differences were first

issued.  Thus, the six-year statute of limitations bars any challenge to the remedial actions at

issue here under the APA.

---

[23] In *Fort Ord*, the Ninth Circuit held that because Section 9620(e) is a separate grant of authority, CERCLA's jurisdictional bar at Section 9613(h) does not apply to challenges to remedial actions taken exclusively under the authority of Section 9620 at certain federal facilities.  189 F.3d at 834.  Defendants believe *Fort Ord* was wrongly decided and that Section 9613(h) also bars challenges to all remedial actions because remedial actions are selected under Section 9604 subject to the requirements of Section 9620.  *See, e.g.*, *Giovanni v. United States Dep't of the Navy*, 906 F.3d 94, 115-16 (3d Cir. 2018).

[24] Defendants assert this defense under Rule 12(b)(6) and rely on allegations in the FAC and Defendants' Request for Judicial Notice (ECF No. 20).

**VII.    The FAC does not state a claim for parcel F or violations not specifically alleged.[25]**

Plaintiff's claims challenging the remedial actions the Navy selected are all time-barred for the reasons discussed above.  A claim challenging the remedial action selected at parcel F would not be time barred because the ROD was issued in September 2024.  But the FAC does not state a claim related to parcel F.  The only RODs that the FAC addresses are for parcels B, C and G.  FAC ¶¶ 107-33.  The allegations pertain to remediation goals for soil and buildings, *id.* ¶¶ 67-103, use of on-site location to "calculate background radiation levels," *id.* ¶¶ 104-06, Tetra Tech's fraud and retesting workplans, *id.* ¶¶ 134-73, the Navy's five-year reviews, *id.* ¶¶ 174-231, and the CERCLA administrative record, *id.* ¶¶ 232-36.  None of these allegations are related to parcel F, which is entirely offshore.  *See id.* ¶ 61.  The allegations instead relate to response actions conducted at the onshore parcels, and therefore cannot state a claim related to parcel F. *See Twombly*, 550 U.S. at 555; *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Plaintiff attempts to broaden the FAC's claims beyond specific alleged violations by using the phrases "including but not limited to," "among other(s)," "among other violations" and "among other things."  FAC ¶¶ 113, 222, 230, 273, 283, 286, 295, 297, 299, 304, 319.  A complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Starr*, 652 F.3d at 1216.  Plaintiff's phrases do not provide notice or plead a plausible claim.  *See Twombly*, 550 U.S. at 555.

**CONCLUSION**

For the reasons set forth above, the Court should dismiss this action.

---

[25] Defendants assert this defense under Rule 12(b)(6) and rely only on allegations in the FAC.