Claudia Polsky (CBN 185505)
Steven J. Castleman (CBN 95764)
BERKELEY LAW ENVIRONMENTAL LAW CLINIC
354 Law Building, UC Berkeley Law
Berkeley, CA 94704
Tel: (510) 664-4761
Email: scastleman@clinical.law.berkeley.edu

Michael R. Lozeau (CBN 142893)
LOZEAU DRURY LLP
1939 Harrison Street, Suite 150
Oakland, CA 84612
Tel: (510) 836-4200
Email: michael@lozeaudrury.com

Attorneys for Plaintiff Greenaction
for Health and Environmental Justice

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| GREENACTION FOR HEALTH AND ENVIRONMENTAL JUSTICE, a non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE NAVY, a military department and agency of the United States; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, a United States government agency,<br><br>Defendants. | Civil No. 3:24-cv-3899-VC<br><br>**PLAINTIFFS' OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date: January 23, 2025<br>Time: 10:00 a.m.<br>Location: Courtroom 4 – 17th Floor<br>Judge: Hon. Vince Chhabria |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES......................................................................................iii

I.    INTRODUCTION ...................................................................................... 1

II.   LEGAL BACKGROUND ........................................................................... 2

   A.   FEDERAL COURTS FREELY ALLOW FOR AMENDING COMPLAINTS ................ 2

III.  ARGUMENT ............................................................................................ 3

   A.   DEFENDANTS' CHALLENGE TO THE FIRST CLAIM IS UNAVAILING................. 3

      1.   EPA's "Failure to Enforce" ......................................................... 7

   B.   THE SECOND CLAIM IS NOT MOOT ......................................................... 7

   C.   THE THIRD CLAIM PLEADS A DEFENSIBLE CLAIM ............................................. 10

   D.   THE FOURTH CLAIM DOES NOT VIOLATE THE STATUTE OF LIMITATIONS... 16

      1.   The 4th and 5th FYRs Must Assure Protectiveness....................................... 17

   E.   DEFENDANTS' CHALLENGE TO THE FIFTH CLAIM IS WELL TAKEN.............. 18

   F.   THE SIXTH CLAIM PROPERLY ALLEGES APA VIOLATIONS............................... 19

IV.   CONCLUSION……………………………………………………………… 25

# TABLE OF AUTHORITIES

**Cases**

*Advanced Micro Devices, Inc. v Nat. Semiconductor Corp.*,
 38 F. Supp. 2d 802 (N.D. Cal. 1999) ...................................................... 27

*Appalachian Voices v. McCarthy*,
 989 F. Supp. 2d 30, 45 (D.D.C. 2013) .................................................... 20

*Bennett v. Spear*,
 520 U.S. 154 (1997).............................................................................. 14, 25

*Church of Scientology of Cal. v. United States*,
 506 U.S. 9 (1992)......................................................................................11

*Ctr. for Biological Diversity v. Esper*,
 958 F.3d 895 (9th Cir. 2020)................................................................... 23

*Ctr. for Biological Diversity v. Hamilton*,
 453 F.3d 1131(11th Cir. 2006) ............................................................... 20

*Ecological Rts. Found. v. Pacific Lumber Co.*,
 230 F.3d 1141 (9th Cir. 2000) ................................................................. 9

*Exxon Corp. v. Hunt*,
 475 U.S. 355 (1986)................................................................................ 27

*Fort Ord Toxics Project, Inc. v. Cal. EPA*,
 189 F.3d 828 (1999 9th Cir.).............................................................. 16, 28

*Frey v. EPA*,
 751 F.3d 461 (7th Cir. 2014)............................................................... 14, 15

*Gilmore v. U.S. Dep't of Energy*,
 33 F. Supp. 2d 1184 (N.D. Cal. 1998) .................................................... 13

*Hamer v. City of Trinidad*,
 924 F.3d 1093 (10th Cir. 2019)............................................................... 20

*Hart v. Massanari*,
 266 F.3d 1155 (9th Cir. 2001) ................................................................ 17

*Hillblom v. County of Fresno*,
 539 F. Supp. 2d 1192 (E.D. Cal. 2008).................................................... 21

*Inst. for Wildlife Prot. v. U.S. Fish & Wildlife Serv.*,
 2007 WL 4117978 (D. Or. Nov. 16, 2007) .............................................. 20

*Long v. U.S. IRS,*
    693 F.2d 907 (9th Cir. 1982) ........................................................................... 14

*Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024) ...................................... 16

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ........................................................................................ 7

*Mammoth Recreations, Inc. v. United States,*
    975 F.2d 604 (9th Cir. 1992) ............................................................................. 6

*Ohio Forestry Ass'n, Inc. v. Sierra Club,*
    523 U.S. 726 (1998) ........................................................................................ 8

*Payne Enter., Inc. v. United States,*
    837 F.2d 486 (D.C. Cir. 1988) ......................................................................... 13

*S. Cal. All. of Publicly Owned Treatment Works v. EPA,*
    8 F.4th 831 (9th Cir. 2021) ............................................................................. 25

*Schlacter-Jones v. Gen. Tel. of Cal.,*
    936 F.2d 435 (9th Cir. 1991) ............................................................................. 6

*Sherwin-Williams Co. v. City of Hamtramck,*
    840 F. Supp. 470 (E.D. Mich. 1993) ................................................................. 27

*Sierra Club v. Johnson,*
    2009 WL 482248 (N.D. Cal. 2009) ................................................................... 20

*Stavrianoudakis v. U.S. Fish & Wildlife Serv.,*
    108 F.4th 1128 (9th Cir. 2024) .............................................................. 8, 9, 10

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ......................................................................................... 11

*Texas v. United States,*
    523 U.S. 296 (1998) ........................................................................................ 8

*United States. v. W.R. Grace & Co.,*
    429 F.3d 1224 (9th Cir. 2005) .................................................................... 27, 28

*Werlein v. United States,*
    746 F. Supp. 887 (D. Minn. 1990) ................................................................... 16

*Wyo-Ben v. Haaland,*
    63 F.4th 857 (10th Cir. 2023) ......................................................................... 20

*Zamani v. Carnes*,
   491 F.3d 990 (9th Cir. 2007) ................................................................................................. 21

**Statutes**

5 U.S.C. § 704 ............................................................................................................................. 23

5 U.S.C. § 706(2)(A) .............................................................................................................. 23, 24

42 U.S.C. § 9604(c) ................................................................................................................. 5, 27

42 U.S.C. § 9613(j)(1) ................................................................................................................. 18

42 U.S.C. § 9613(j)(2) ................................................................................................................. 24

42 U.S.C. § 9613(k)(2)(B)(iv) ..................................................................................................... 19

42 U.S.C. § 9620 ......................................................................................................................... 14

42 U.S.C. § 9621(c) ......................................................................................................... 12, 21, 28

42 U.S.C. § 9659 ......................................................................................................................... 24

**Rules & Regulations**

40 C.F.R. § 300.410(b) ................................................................................................................ 27

40 C.F.R. § 300.415(b)(5) ........................................................................................................... 26

40 C.F.R. § 300.805(c) ................................................................................................................ 19

40 C.F.R. § 300.815(b) ................................................................................................................ 19

Fed. R. Civ. P. 15(a)(2) ................................................................................................................ 6

**Other Authorities**

*Guidance Documents Managed by the Office of General Counsel*, EPA,
   https://www.epa.gov/ogc/guidance-documents-managed-office-general-counsel (current as of
   Dec. 5, 2024) ............................................................................................................................ 22

*Superfund Site Hunters Point Naval Shipyard, San Francisco CA: Cleanup Progress,* EPA,
   https://cumulis.epa.gov/supercpad/SiteProfiles/index.cfm?fuseaction=second.schedule&id=09
   02722#Schedule (last visited Dec. 2, 2024). ........................................................................... 26

## I.  INTRODUCTION

In 2006, the Navy adopted radiological remedial goals for the Superfund cleanup at the former Hunters Point Naval Shipyard ("Shipyard"). Eighteen-plus years later, the Navy **still** has not developed sufficient data to describe the extent of radiological contamination and cannot tell the public or the court when it will. The Navy's cleanup contractor committed fraud, and a decade of work had to be abandoned. The *only* way to accomplish a protective cleanup is to fully retest all the fraudulent contractor's work, which is what Greenaction has sought from the Navy and EPA since 2017. First Amended Complaint for Declaratory and Injunctive Relief ("First Amended Complaint" or "FAC"), Exhibit 1; 60-Day Notice, 11. The Navy continues to refuse.

Instead, the Navy is botching its *second* cleanup, as described in detail in the First Amended Complaint and the 60-Day Notice. This action seeks the court's intervention to force the Navy to do a protective cleanup and prevent it from having to do the cleanup a *third* time.

The Navy's last two Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") five-year reviews ("FYRs"), the *Fourth* and *Fifth*, also violated the deadlines set by Congress and violated its mandatory duty to assure remedies remain protective. The Navy has wrongfully deferred that assurance until some ill-defined future. For example, it has never calculated the *cumulative risk* from radiological and chemical contamination combined, let alone demonstrate the cleanup is protective of that risk. FAC, ¶185, 299.

Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("Motion to Dismiss" or "MTD") claims that the Shipyard's nearly twenty-year radiological remediation is a "removal action." But, under 42 U.S.C. § 9604(c), removal actions are limited to those lasting less than a year and costing up to two million dollars. Why does the Navy style remedial actions

as "removals?" To take advantage of less stringent duties, including depriving this Court of the authority to intervene. *Fort Ord Toxics Project, Inc. v. Cal. EPA*, 189 F.3d 828 (1999 9th Cir.).

If there was ever a CERCLA citizens suit crying out for judicial intervention, this action to compel a competent radiological cleanup is it. Judicial intervention is required to force the Navy and EPA to comply with their duties under CERCLA. Greenaction respectfully seeks this Court's order to assure the Shipyard cleanup is protective of human health and the environment.

## II.  LEGAL BACKGROUND

### A.  FEDERAL COURTS FREELY ALLOW FOR AMENDING COMPLAINTS

Under Rule 15(a)(1) of the Federal Rules of Civil Procedure, a plaintiff "may amend its pleading once as a matter of course," within 21 days of service of the complaint, filing of a responsive pleading, or a motion to dismiss. "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Leave to amend is "freely given," with certain limited exceptions. *Schlacter-Jones v. Gen. Tel. of Cal.,* 936 F.2d 435 (9th Cir. 1991). "[L]eave to amend should be granted unless amendment would cause prejudice to opposing party, is sought in bad faith, is futile, or creates undue delay." *Mammoth Recreations, Inc. v. United States*, 975 F.2d 604, 608 (9th Cir. 1992).

Defendants' Motion does not seek dismissal with prejudice. They neither state objections to Plaintiff amending the complaint if the Court grants its motion in whole or in part, nor allege further amendment of the complaint is sought in bad faith, is futile, creates undue delay, or prejudices them. Accordingly, should the Court find merit in any of Defendants' arguments, Plaintiff respectfully requests leave to amend to cure deficiencies identified by the court.

## III.  ARGUMENT

### A.  DEFENDANTS' CHALLENGE TO THE FIRST CLAIM IS UNAVAILING

The First Claim challenges the retesting work plans for Parcels B, C, and G. Since filing the Complaint herein, the Navy conceded 100 percent soil retesting will be done in Parcels B and C. MTD, 10. A *single* radioactive object was discovered in each parcel above the remedial goal for radium-226, one (1) picocurie per gram of soil ("pCi/g") above background. A 3/16 inch diameter piece of glass was found in Parcel B soil radiating 9,700 pCi/g of radium-226, and a one. A one and a half to two (1½-2) inch diameter deck marker was found in Parcel C soil emitting 60,000 pCi/g of radium-226. Plaintiff's Request for Judicial Notice ("Request for Judicial Notice" or "RFJN") No. 2 & 3. They exceeded remedial goals by orders of magnitude. Accordingly, 100 percent retesting has been triggered. Having obtained the relief it sought as to Parcels B and C soil retesting, these First Amended Complaint allegations are resolved.

The Parcel G retesting remains at issue because sampling there found numerous samples exceeding the remedial goal for strontium-90. FAC, ¶ 245. However, Defendants have made a final decision improperly invalidating these results, to wrongfully renege on the retesting plan. FAC, ¶ 168. *See also* Declaration of Kathryn Janda ("Janda Decl."), ¶¶ 12–15.

Defendants attack the First Claim on two bases, ripeness, and failure to state a cause of action. They argue first that a challenge to the Navy's soil retesting plans is unripe because the work is ongoing. MTD, 10–12.[1]

---

[1] Defendants cite *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), arguing that ripeness is one of the three "irreducible constitutional minimums" to confer standing. MTD, 10. However, *Lujan* does not state a ripeness test; the word "ripeness" does not appear in the opinion. The "irreducible constitutional minimums of standing," according to *Lujan*, are injury in fact, causation, and redressability. *Lujan*, 504 U.S. at 590.

They cite *Texas v. United States*, 523 U.S. 296 (1998), which held that if decisions are contingent upon future events that may not occur, they are not ripe. They also cite *Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, which opines: "Constitutional ripeness overlaps with the injury-in-fact element of Article III standing, and 'therefore the inquiry is largely the same: whether the issues presented are definite and concrete, not hypothetical or abstract.'" 108 F.4th 1128, 1138 (9th Cir. 2024).

Here, the challenged decisions are neither hypothetical nor contingent on future events. Ms. Janda's Declaration makes clear that Phase 1 is over: "Parcel G is in Phase 2." Janda Decl., ¶ 11. As alleged in the First Amended Complaint, The Navy has made a final decision not to do 100 percent soil retesting in Parcel G based on its invalidation of the samples that exceeded remedial goals. FAC, ¶¶ 155–168. Therefore, the First Claim's challenge to the *Parcel G Retesting Plan* for violating its commitment to do 100 percent soil retesting if contamination was found is not contingent on future events and is ripe.

Defendants cite *Ohio Forestry Ass'n, Inc. v. Sierra Club*, arguing that the First Claim fails its three-part test for prudential ripeness:

> (1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented.

523 U.S. 726, 733 (1998).

In *Ohio Forestry*, the Supreme Court considered a challenge to a Fish and Wildlife Service ("FWS") logging policy and held it was not ripe because the policy had not been implemented and could interfere with the agency's ongoing efforts to refine it. 523 U.S. at 735.

In contrast to FWS's unfinished, unimplemented policy, the Navy adopted a final retesting plan for Parcel G and implemented it. Accordingly, this case is not akin to the premature challenge in *Ohio Forestry*.

The court in *Stavrianoudakis* also held that in cases against government agencies, considerations relevant to the Shipyard for prudential ripeness include "whether the administrative action is a definitive statement of an agency's position" and whether the action has a direct effect on the Plaintiff. 108 F.4th at 1139.

The Defendants' invalidation of multiple samples exceeding remedial goals (FAC, ¶ 245) and proceeding to Phase 2 without full Phase 1 soil retesting is a "definitive statement" of the agencies' position. Its impact on Greenaction satisfies *Ohio Forestry* and *Stavrianoudakis*; it is not hypothetical. Failure to do 100 percent soil retesting renders the cleanup less protective and extends the threat to Greenaction members and supporters who live, work, or recreate near the Shipyard. The longer the contamination remains, the more likely it could be mobilized by weather (RFJN ¶ 1(c)), natural disasters like earthquakes or other impacts like climate change. An "increased risk of harm can itself be injury in fact sufficient for standing." *Ecological Rts. Found. v. Pacific Lumber Co.*, 230 F.3d 1141 (9th Cir. 2000).

Furthermore, this threat cannot be abated by Phase 2 retesting because Phase 2 cannot demonstrate protectiveness even if it is done properly and finds no contamination. The Navy cannot find small, discrete, highly radioactive objects, like those it already found in Parcels B and C, if it does not look for them!

Ms. Janda describes Phase 2 sampling in her declaration. In addition to surface scans, the Navy "will conduct soil sampling in at least eighteen boring locations within each trench boundary with one boring every fifty linear feet along the side walls of the trench." Janda Decl.,

¶ 11. Neither Ms. Janda's declaration nor any Navy document answers two common-sense questions. How can bore-hole samples eighteen feet apart prove there are no radioactive objects exceeding remedial goals, as small as 3/16 of an inch in diameter, in the eighteen feet of soil between bore-holes? And how can the Navy demonstrate there is no contamination in soil they never screen?

The Navy will not do full soil retesting of the majority of Parcel G soil (sixty-seven percent of it, less the diameters of the eighteen bore samples).. It has gone to great lengths to avoid 100 percent retesting. FAC, ¶¶ 6, 155–168, 203–204, 244. It will not accomplish a protective cleanup unless this Court enforces the *Parcel G Retesting Plan*. The decisions have been made. The challenge is ripe.

Rather than inappropriately interfering with the retesting effort, Greenaction's efforts seek to assure the protectiveness of the cleanup, preventing further waste of time and taxpayer money in Phase 2, which is fatally flawed. In short, Greenaction has pled sufficient facts to show injury in fact, causation, redressability, and ripeness. It also alleges sufficient facts to show the issues presented are, as *Stavrianoudakis*, puts it, "definite and concrete, not hypothetical or abstract." 108 F.4th at 1138.

Finally, contrary to what the Motion to Dismiss states, the First Amended Complaint specifically alleges that a faulty cleanup prejudices Greenaction, and its members and constituents. FAC, ¶¶ 22–26. Rather than inappropriately interfering with the ongoing cleanup, Plaintiff's action seeks to assure enforce the law. Securing compliance with the law cannot be "interference." The Court will be assisted not by dismissing the case, but by hearing it. The First Amended Complaint properly puts the Parcel G retesting at issue.

However, should the court find merit in any of Defendants' arguments as to the First Claim, Plaintiff respectfully requests that the Court grant reasonable time to amend the complaint to cure defects identified by the court.

### 1. EPA's "Failure to Enforce"

Defendants contend Greenaction's claim that the EPA "failed to enforce the FFA" (Federal Facilities Agreement) is not cognizable, nor does it constitute a CERCLA violation.

Defendants' point is well-taken. Accordingly, Plaintiff respectfully requests that the Court permit Plaintiff reasonable time to amend the complaint to allege instead that the EPA has violated its independent non-discretionary duties under CERCLA, the National Oil and Hazardous Substances Pollution Contingency Plan ("NCP") and the FFA, including but not limited to assuring the cleanup is protective of human health and the environment.

### B. THE SECOND CLAIM IS NOT MOOT

Defendants assert the Second Claim is moot because it is not redressable, arguing "the only relief the Court could order under Section 9659(a)(2) (complete the reviews) has already taken place." MTD, 13. They cite *Church of Scientology of Cal. v. United States*, arguing that "if the availability of redress disappears during the case, then standing no longer exists, and the case becomes moot." 506 U.S. 9, 12 (1992).

However, in *Steel Co. v. Citizens for a Better Env't*, the Supreme Court held that allegations of continuing violations or of threatened injury from future violations demonstrated redressability, but they must be pled: "If respondent had alleged a continuing violation or the imminence of a future violation, the injunctive relief requested would remedy that alleged harm. But there is no such allegation here." 523 U.S. 83, 108 (1998).

The threat of future five-year review violations is specifically alleged. The First Amended Complaint alleges that by sequencing the *Fourth* and *Fifth Five Year Reviews* as it has, the Navy

granted itself a deadline extension, "forever into the future." FAC, ¶ 181. The Prayer for Relief

seeks an order that the Navy "meet the statutory five-year deadline for each subsequent review

on a date to be set by this Court, but in any case, not beyond a November 8, 2028, deadline for

the *Sixth FYR,* and continuing for each successive Review not less than every five years

thereafter." FAC, 59 (Prayer for Relief, ¶ C).

Furthermore, EPA recognizes the Navy intends to violate the deadline for the *Sixth FYR*.

In its April 30, 2024, comments to the *Draft Fifth Five Year Review*, the EPA wrote: "As EPA

outlined in its November 16, 2023, letter, the trigger action date is the Remedial Action Start

date, not the signature date of the Fourth FYR. As such, the statutory due date for the Sixth FYR

is November 8, 2028. Please correct the table to reflect the statutory due date." However, in the

*Final Fifth FYR*, the Navy stated its intention to publish its *Sixth FYR* on July 31, 2029. RFJN,

¶ 4; *Final Fifth FYR*, Appendix I, I–190.

Defendants read the statutory FYR deadlines as requiring nothing more than publishing a

document. Though they quote 42 U.S.C. § 9621(c)'s assure-protectiveness language, they fail to

discuss this requirement. MTD, 19. But, in conjunction with the allegations made in the Fourth

Claim, the First Amended Complaint makes clear that the publication deadline is only one of the

mandatory duties imposed by CERCLA. The true crux of a FYR is an affirmative decision that

the remedy is and remains protective. If the remedy is not protective, the responsible party must

identify deficiencies and describe how it will achieve protectiveness. 42 U.S.C. § 9621(c).

Failure to assure protectiveness is exactly what is alleged in the First Amended Complaint. FAC,

¶¶ 8, 9, 114, 173, 185, 199–205, 207–209, 266–270, 289–293.

Like the deadline violations alleged in the Second Claim, the allegations in the Fourth

are parallelled by the Prayer for Relief, which seeks an order requiring that an FYR "assure[s]

that its remedy is protective of human health and the environment and uses the most recent risk calculations and toxicity data via EPA-approved methods." FAC, 59 (Prayer for Relief, ¶ C). The Court has the authority to grant this relief, as alleged in the First Amended Complaint. FAC, ¶ 17. Defendants' reading of CERCLA's FYR obligations is incomplete, at best.

Freedom of Information Act (FOIA) litigation over deadline violations and whether they become moot upon release can inform the issue of CERCLA deadlines. Just because an agency, which failed to meet a statutory deadline, eventually releases the documents, that does not necessarily mean a FOIA cause of action is moot. In *Gilmore* v. *U.S. Dep't of Energy*, the Court held: "An untimely response to a FOIA request [is] a separate injury to the requesting party, even if the requested document could be properly withheld." 33 F. Supp. 2d 1184, 1187 (N.D. Cal. 1998). Here, a late release of FYRs injures the general public, which is entitled to timely assurance the cleanup is protective, including Plaintiff. The Navy's violation of the FYR deadline is more egregious because, unlike in *Gilmore*, the Navy could *not* properly withhold the FYRs.

In *Payne Enter., Inc. v. United States*, plaintiff Payne relied on FOIA to obtain bid abstracts from the Air Force Logistics Command ("AFLC"). 837 F.2d 486, 488 (D.C. Cir. 1988). The AFLC officers later began refusing plaintiff's FOIA requests. The court rejected the government's mootness argument:

> So long as an agency's refusal to supply information evidences a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA, and not merely isolated mistakes by agency officials, a party's challenge to the policy or practice cannot be mooted by the release of the specific documents that prompted the suit.

*Id*. at 491.

Courts are impowered to enjoin future FOIA violations. "The district court may consider injunctive relief where appropriate . . .  to bar future violations that are likely to occur." *Long v.*

*U.S. IRS*, 693 F.2d 907 (9th Cir. 1982). Similarly, the Court may bar the Navy from future FYR deadline violations, which the Navy has twice violated and has stated in writing it will do again.

Under Defendants' theory, responsible parties can intentionally violate FYR deadlines, simply refusing to publish them. If challenged, they can immunize themselves by issuing a pro-forma statement, secure in the knowledge that they need not fear troublesome court orders. Furthermore, under 42 U.S.C. § 9620, private responsible parties and federal responsible parties are to be treated the same. If the Navy can ignore FYR deadlines without consequences, then so too can private responsible parties, effectively negating FYRs altogether. Can EPA really endorse the dismantling of this essential CERCLA requirement?

### C.  THE THIRD CLAIM PLEADS A DEFENSIBLE CLAIM

The Third Claim alleges the Navy and EPA failed to: "a. ensure protection of human health and the environment; b. accurately characterize the extent of contamination at HPNS; and c. select protective remedial goals." FAC, ¶ 270. Defendants concede that "CERCLA does require selection of 'remedial action[s] that [are] protective of human health and the environment.' 42 U.S.C. § 9621(b)(1)."[2] But they assert the Navy and EPA have "completed" their non-discretionary duties to select a protective remedy. MTD, 14. Remarkably, they simply ignore the allegations quoted above that they failed to "accurately characterize the extent of contamination at HPNS," and "failed to select protective remedial goals."

Rather, they assert, "[a]ny challenge to the substance of the selected remedies cannot be grounds for a citizen's suit." MTD, 15. Defendants cite *Frey v. EPA*, 751 F.3d 461, 469 (7th Cir. 2014) and *Bennett v. Spear*, 520 U.S. 154 (1997), arguing that "nondiscretionary duty review

---

[2] 42 U.S.C. § 9659(b)(2) deals with venue, not non-discretionary actions, and is not cited in the FAC. Plaintiff assumes Defendants meant to cite 42 U.S.C. § 9659(a)(1).

under the Endangered Species Act [was] limited to whether EPA followed proper procedures," and argue the same should apply to CERCLA. MTD, 14.

First, it is noteworthy *Frey* held there *is* a non-discretionary duty to conduct a Remedial Investigation/Feasibility Study ("RI/FS"): "We agree with plaintiffs that the EPA had a non-discretionary duty to prepare the functional equivalent of an RI/FS for Stage 1." *Frey*, 751 F.3d at 470.

In *Frey*, the cleanup was broken into three stages. Stage 1 was complete, allowing for challenges under 42 U.S.C. § 9613(h), which bars challenges while most cleanups occur. Plaintiffs alleged that "because the EPA did not consider whether Stage 1 would stop all PCB releases into the environment" the RI/FS was defective. Second, they argued that the Stage 1 remedy violated CERCLA's mandate to protect human health and the environment "because Stage 1 did not stop all releases of PCBs into the environment." *Id*. at 469. But *Frey* held:

> Contrary to plaintiffs' assertions, the EPA did consider whether Stage 1, standing alone, would stop all PCB releases from the sites into the environment. It concluded that Stage 1 would significantly improve soil quality at the sites but that further remediation of the contaminated groundwater and sediment would be needed. In other words, the EPA considered Stage 1 to be a good first step toward preventing all PCB releases into the environment from the sites and explained that future steps would be needed to solve the problem fully.

*Id*. at 470.

The "first step" never claimed to describe the entire remediation, Plaintiffs' allegations were incorrect, and any inquiry into later stages of the cleanup was premature.

Furthermore, *Frey* stressed that its holding was limited by what Plaintiffs alleged: "Plaintiffs have not argued that [CERCLA] § 310(a)(2) should be interpreted differently from the citizen suit provisions in the Endangered Species Act and Clean Water Act." *Id.* at 470. In

contrast, Greenaction hereby argues *Frey* established an overly broad interpretation of what is discretionary and should not be precedential in the Ninth Circuit.

The facts of the Shipyard cleanup are very different than *Frey*. First, as alleged in the First Amended Complaint, the Navy did not conduct an RI/FS that fully characterized the extent of contamination. Rather, it used a "spill model," which is not an EPA-approved method and is inappropriate to radiological contamination. FAC, ¶¶ 284–88.

Second, there are no additional phases of treatment at the Shipyard. Treatment of radioactive contamination is not an option; the only way to remediate radioactive contamination is to remove it to an appropriately licensed dump site. Thus, the Shipyard cleanup is not a "first step" to be followed by subsequent steps that will further contribute to protecting public health. The Parcel retesting plans describe the only testing and remediation that will be done.

Third, *Frey* was decided before *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024), and it gave EPA deference to which it is no longer entitled. The Navy allowed the Shipyard fraud to happen under its oversight. FAC, ¶ 4. EPA violated its own guidances. FAC, ¶¶ 314–318. Neither is entitled to any claim of deference.

Fourth, the Ninth Circuit differs from the Seventh Circuit on CERCLA, particularly about citizens' ability to sue federal facilities on the National Priorities List ("NPL"). *Fort Ord Toxics Project, Inc. v. Cal. EPA*, 189 F.3d 828 (1999 9th Cir.), defines the law in the Ninth Circuit, not *Frey*. Under *Fort Ord*, 42 U.S.C. § 9613(h) does not bar citizens suits challenging remedial actions at federal Superfund sites. *Id*. at 832.[3]

---

[3] Defendants assert *Fort* Ord is wrongly decided, "because remedial actions are selected under Section 9604 subject to the requirements of Section 9620." MTD, 24 n.23. They are incorrect; cleanups at sites owned by the Department of Defense proceed under 42 U.S.C. § 9620, not § 9604: "In cases where the release occurs on property owned by the Department of Defense, the President's response authority is delegated to the Secretary of Defense, who must exercise that

Plaintiff respectfully urges this Court to hold that *Frey* establishes an unreasonably broad view of what is discretionary and establish a narrower reading that conforms to *Fort Ord*. For example, the Navy must not be permitted to claim that Shipyard soil is free from general radiological contamination and individual radioactive objects unless it affirmatively rescreens 100 percent of the soil. One-third soil screening cannot establish protectiveness. A decision to leave the majority of soil in a parcel uninvestigated, which compromises protectiveness, is not a proper exercise of discretion and is subject to citizen suit challenges.

Defendants assert the only duty the Navy must meet is to declare in Records of Decision ("RODs") that each parcel's remedy is protective; they fail to address whether it is supported by sufficient data. But that makes a mockery of the duty; there is nothing to stop a responsible party from making a protectiveness determination without adequate support and under Defendants' analysis citizens are precluded from all challenges. That is precisely the case here. The First Amended Complaint alleges there is insufficient factual support for the protectiveness finding in the RODs. For example, the First Amended Complaint cites the Navy's reliance on improper, non-EPA-approved methods in setting its remedial goals. FAC, ¶¶ 13, 71, 81–103.

If Defendants' assertion that neither the Administrative Procedure Act ("APA") nor CERCLA authorize challenges to *any* discretionary decisions, no matter their scope or impact on

---

authority 'consistent with the requirements of [section 9620]. Exec. Order No 12,580 2(d), 3 C.F.R. 193 (1988).'" *Werlein v. United States*, 746 F. Supp. 887 (D. Minn. 1990) (brackets in original), vacated in part, 793 F. Supp. 898 (D. Minn. 1992). The First Amended Complaint alleges the Shipyard cleanup is proceeding under 42 U.S.C. § 9620. FAC, ¶ 54. Defendants do not ask the Court to ignore or overrule *Fort Ord*, presumably because they are cognizant district courts must follow the law as set by their circuit courts of appeal. *Hart v. Massanari*, 266 F.3d 1155 (9th Cir. 2001): "A district court bound by circuit authority, for example, has no choice but to follow it, even if convinced that such authority was wrongly decided." *Id.* at 1175.

protectiveness, CERCLA citizens suits will be neutered. This Court should decline to make CERCLA citizens suits meaningless.

As to the Administrative Record ("AR") allegations, Defendants acknowledge that "[t]he Navy is required to 'establish an AR' that forms the basis for 'selection of [its] response action[s],' which 'shall be available to the public at or near the facility at issue.' 42 U.S.C. § 9613(k)(1); 40 C.F.R. § 300.800(a)." MTD, 15.

One of the major purposes of an AR is to facilitate public comment. FAC ¶ 233, 304. However, the Navy contends it has absolutely no duty to assure the AR is available in a form that is actually useful to the public. Rather, they claim that the entire record, which in this case contains thousands of documents spanning more than three decades, can be dumped in a repository helter-skelter, forcing people to sift through unorganized files without the functional equivalent of a road map.

Furthermore, the Navy must organize the AR for the benefit of this Court:

> In any judicial action under this chapter, judicial review of any issues concerning the adequacy of any response action taken or ordered by the President shall be limited to the administrative record. Otherwise applicable principles of administrative law shall govern whether any supplemental materials may be considered by the court.

42 U.S.C. § 9613(j)(1).

According to the Navy, it has no duty to make the AR any more useful to the Court than to the public. The Court has a right to expect better. So does the public. The Court should hold the Navy to a higher standard. The AR must be at least minimally organized so the Court and public can make use of it as CERCLA intended.

Defendants simply ignore the allegation that the AR was "at or near" the site at one time but was closed. FAC, ¶ 235. Nor do they assert that the AR at the Main Public Library, which the

First Amended Complaint alleges is more than five miles from the Shipyard, is "at or near" it, which it clearly is not. FAC, ¶¶ 235–36.

Defendants note that the AR is online. MTD, 4–5. Although the NCP allows for online ARs pursuant to 40 C.F.R. § 300.805(c), nothing in the law authorizes an online AR to substitute for an AR "at or near" the site.

The Motion to Dismiss also asserts that "[e]ven if there were requirements regarding the precise contents of the AR, Plaintiff fails to identify a single document that must be in the record that is not." MTD, 17. The Motion to Dismiss inappropriately, and without citation to any legal authority, asks that Plaintiff prove a negative rather than focus on the Navy's affirmative duty. This is a misreading of the Navy's obligations. However, should the Court find merit in this argument, Plaintiff respectfully requests that the Court permit amendment of the complaint to include identifying documents that should be in the AR but are not.

Finally, the Navy plays word games with the allegation that it did not "address" all public comments. It concedes that it must "consider" all comments but argues that it need not "address" them, despite CERCLA's mandate under 42 U.S.C. § 9613(k)(2)(B)(iv) ("A response to each of the significant comments, criticisms, and new data submitted in written or oral presentations") and 40 C.F.R. § 300.815(b) ("A written response to significant comments submitted during the public comment period shall be included in the administrative record file.") They fail to define any differences between "addressing" and "responding," or describe how those differences permit them not to respond to significant comments, as CERCLA and the NCP require.

However, should the court find merit in any of the Defendants' arguments, Plaintiff respectfully requests that the Court Plaintiff permit further amendment of the First Amended Complaint.

### D.  THE FOURTH CLAIM DOES NOT VIOLATE THE STATUTE OF LIMITATIONS

Defendants concede that "[t]he fourth and fifth five-year reviews were issued within the six-year statute of limitations." MTD, 18. They argue all allegations of violations occurring prior to the *Fourth FYR* are barred. They are incorrect because the First Amended Complaint properly alleges "repeated and continuing" violations. FAC, ¶¶ 8, 258, 294, 298, 299, 304.

Defendants ignore these allegations; the words "repeated" and "continuing" do not even appear in the Motion to Dismiss.

As alleged in the First Amended Complaint, the original Remedial Goals ("RGs") were adopted in violation of CERCLA, the NCP and the FFA, impacting the cleanup today. FAC, ¶¶ 12–13. For example, the First Amended Complaint alleges that the RG for radium-226 in soil was adopted under an agreement between the EPA and the Navy, rather than by using the EPA soil PRG Calculator. FAC, ¶ 92. Similarly, the building RGs were based on RESRAD, a non-EPA-approved method, rather than the Building PRG Calculator. FAC, ¶¶ 97–103.

Each sample's analytical result is compared to the RGs. If RGs are exceeded, remediation is called for; if not, no remediation is done. But if the RGs were adopted improperly and are unprotective, like the radium-226 and building RGs alleged here, each time a decision was made to forgo remediation based on erroneous RGs constitutes a violation of the nondiscretionary duty of protectiveness. And, since the Navy has never updated the 2006 RGs, they are still being applied today. FAC, ¶ 13. Where violations are repeated and/or continuing, the statute of limitations continues to reset until the violations cease. *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1131(11th Cir. 2006); *Appalachian Voices v. McCarthy*, 989 F. Supp. 2d 30, 45 (D.D.C. 2013); *Wyo-Ben v. Haaland*, 63 F.4th 857 (10th Cir. 2023); *Hamer v. City of Trinidad*, 924 F.3d

1093, 1100 (10th Cir. 2019); *Sierra Club v. Johnson,* 2009 WL 482248 (N.D. Cal. 2009); *Inst. for Wildlife Prot. v. U.S. Fish & Wildlife Serv.,* 2007 WL 4117978, at *5 (D. Or. Nov. 16, 2007).

Although the Court retains discretion, it is generally not proper for parties to introduce new legal arguments in reply briefs to their motions to dismiss. *Hillblom v. County of Fresno*, 539 F. Supp. 2d 1192 (E.D. Cal. 2008); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Accordingly, Plaintiff respectfully urges the court not to consider Defendants' legal arguments if they address "repeated and continuing violations" in its reply brief despite having failed to address those issues in their Motion to Dismiss.

### 1. The 4th and 5th FYRs Must Assure Protectiveness

As to the FAC's alleged violations of the *Fourth* and *Fifth FYRs*, Defendants argue, "neither CERCLA nor the NCP require the Navy to take the specific actions Plaintiff contends." Citing 42 U.S.C. § 9621(c) and related regulations, they contend CERCLA FYRs contain "a single statutory requirement," that is "to review the remedial actions every five years 'to assure that human health and the environment are being protected by the remedial action being implemented.'" MTD, 19.

As argued above, there are two non-discretionary duties, not one. CERCLA mandates that reviews must be conducted "no less often than each 5 years after the initiation of such remedial action." Second, the review must "assure" the remedy is and remains protective of human health and the environment. 42 U.S.C. § 9621(c). But while Defendants' claim the alleged deadline violations are moot, they ignore the second mandate, assuring protectiveness.

Defendants argue that the allegations the Navy violated the FFA by failing to act "in accordance with" EPA guidance, fails to state a claim because guidances are discretionary.

EPA guidances are normally not mandatory. However, the Defendants disregard the effect of the FFA. By mutual agreement among the parties, the FFA binds them to follow EPA guidances *contractually*. EPA's website explicitly agrees guidances may become mandatory by mutual agreement: "EPA's guidance documents lack the force and effect of law, unless expressly authorized by statute or incorporated into a contract." RFJN, ¶ 5.[4]

That is precisely what the FFA does. Although Defendants cite the FFA, they claim it merely restates the statutory five-year obligations. They overlook paragraph 2.1 of the FFA, which explicitly states: "The parties to this Agreement are EPA, the Navy, and the State of California. The terms of the Agreement **shall apply to and be binding upon EPA, the State of California, and the Navy**" (emphasis added). Paragraph 13.1(a) of the FFA also clearly states that "any person" may enforce the FFA. Defendants fail to address the contractually binding nature of the agreement mandating they follow EPA guidances that are otherwise discretionary.

Finally, Defendants assert, "Plaintiff's claim that EPA 'failed to enforce the FFA' is not viable." This issue was addressed above in response to the challenge to the Second Claim.

Should the court find merit in any of the arguments made by Defendants, Plaintiff respectfully requests that the Court permit Plaintiff reasonable time to amend the complaint.

### E.  DEFENDANTS' CHALLENGE TO THE FIFTH CLAIM IS WELL TAKEN

Defendants' challenge to the Fifth Claim asserts that 42 U.S.C. § 9613(j) sets a standard for judicial review; it does not establish a cause of action.

Defendants' point is well-taken. Plaintiff respectfully requests that the Court permit further amendment of the Complaint to clarify that the allegations in this claim are pled in the

---

[4] *Guidance Documents Managed by the Office of General Counsel*, EPA, https://www.epa.gov/ogc/guidance-documents-managed-office-general-counsel (current as of Dec. 5, 2024).

alternative with the Sixth Claim, as authorized under Fed. R. Civ. P. 8(d)(2). The Fifth Claim will allege that Defendants violated CERCLA by actions and inactions that were arbitrary, capricious, or otherwise not in accordance with law; if the Court disallows that claim, Plaintiff will seek relief under the Sixth Claim, alleging Defendants' actions and inactions were arbitrary, capricious, or otherwise not in accordance with law, and/or an abuse of discretion, in violation of the APA.

### F.   THE SIXTH CLAIM PROPERLY ALLEGES APA VIOLATIONS

The Sixth Claim alleges APA violations by the Navy and EPA. As to EPA alone, the Sixth Claim also alleges that it violated its own guidances. FAC, ¶¶ 314–19. Rather than address the claim's allegations, Defendants argue this claim is not what the First Amended Complaint says it is: "These are CERCLA citizen-suit claims, not APA Claims." MTD, 22. Defendants make this assertion but, like so many other issues they ignore, they fail to make a reasoned argument based on facts and law to support it. To the contrary, this claim is what it says it is. And, as discussed above, it is pled in the alternative; should Greenaction be granted relief under CERCLA in a Second Amended Complaint's Fifth Claim (if the court allows further amendment), APA relief will not be authorized or necessary. If Defendants are correct that relief cannot be granted under CERCLA, Plaintiff will seek relief under the APA.

The APA authorizes suits challenging final agency actions "for which there is no other adequate remedy in a court," that is, for which there is no other basis for judicial relief. 5 U.S.C. § 704; *Ctr. for Biological Diversity v. Esper*, 958 F.3d 895, 903 (9th Cir. 2020).

Under 5 U.S.C. § 706(2)(A), agency actions must not be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." That is precisely what the Sixth Claim alleges, in the very language of § 706(2)(A):

> As described above, the actions and inactions by the Navy and EPA at HPNS were **arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law**. To the extent their decisions, actions, and inactions in selecting response actions, as described above, were discretionary, they were arbitrary, capricious, and not in accordance with CERCLA, the NCP and the FFA (emphasis added).

FAC, ¶ 313.

Defendants ignore the plain meaning of this language to twist the allegation into a CERCLA claim. They disregard that the claim never cites 42 U.S.C. § 9659, the citizens suit provision. Defendants apparently read the reference to CERCLA, the NCP, and the FFA as stating a CERCLA challenge rather than what it is, a reference to "not in accordance with law."

Defendants also make internally inconsistent arguments. They assert that claims "cognizable under CERCLA's citizen-suit provision cannot be brought under the APA" because an "APA challenge [is] only available if there is no other basis for judicial relief." MTD, 22. But they also assert CERCLA provides "no other basis for judicial relief," that it bars citizens from suing over even partially discretionary actions. MTD, 14–15. They fail to acknowledge or explain this inconsistency.

The APA also provides relief CERCLA does not. 42 U.S.C. § 9613(j)(2) states that relief under CERCLA may be granted if "the objecting party can demonstrate, on the administrative record, that the decision was arbitrary and capricious or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A), on the other hand, authorizes relief in an additional circumstance not available under CERCLA, where there is "an abuse of discretion."

The Sixth Claim alleges just that. FAC, ¶¶ 313–18. Accordingly, claims for abuse of discretion, which are not authorized under CERCLA, can be pursued under the APA.

Defendants further assert that Plaintiff failed to allege final agency action, though they concede that the selection of the basewide removal action, RODs, ESDs and Amended RODs are all final documents. MTD, 23.

For an agency action to be final it must: "(1) mark the consummation of the agency's decisionmaking process . . . [a]nd . . . (2) be one by which rights or obligations have been determined, or from which legal consequences will flow." *S. Cal. All. of Publicly Owned Treatment Works v. EPA*, 8 F.4th 831, 836 (9th Cir. 2021) (quoting *Bennett*, 520 U.S. at 177–78).

In this instance, Defendants simply ignore the facts. For example, the Navy described all three retesting plans as "final" in their very titles. They are what they say they are, final documents, "marking the consummation of the decisionmaking process," (i.e., invalidating the strontium-90 contamination in Parcel G soil to improperly renege on 100 percent soil retesting and proceeding to the gravely defective Phase 2). Further, the retesting plans established obligations from which legal consequences flow (i.e., their terms are enforceable under CERCLA, the NCP and the FFA, ¶ 13.1.)

Moreover, neither the Navy nor EPA have explained why the retesting plans were necessary at all. The fraud was in the *implementation* of the parcels' RODs, which required 100 percent soil screening; they never contemplated partial screeniing as the retesting plans do. The retesting plans significantly weakened the RODs, calling for full rescreening of only one-third of the soil. Thus, they act functionally as ROD amendments, which Defendants concede would be "final" documents if the Navy had styled them properly.

The Navy's own Motion also confirms the finality of the decision. Ms. Janda's declaration acknowledges, "parcel G is in Phase 2." Janda Decl., ¶ 11. Phase 2 cannot occur until Phase 1 is completed without finding contamination.

Accordingly, Defendants' arguments are mis-founded. However, should the Court find merit to any of their arguments, Plaintiff respectfully requests that the Court permit further amendment of the First Amended Complaint to cure deficiencies identified by the Court.

Defendants then argue that 42 U.S.C. § 9613(h) bars review of the *2006 Removal Action Memorandum* ("2006 Removal Action"). MTD, 23–24.

First, there is a significant factual dispute over whether the radiological cleanup is a removal action. Plaintiff alleges in the First Amended Complaint that the radiological cleanup is being done as a remedial action at each parcel. FAC, ¶¶ 13, 78–80, 85–92, 93–103, 115, 294.)

The *2006 Removal Action's* subject line is, "Final Action Memorandum for **Time-Critical Removal Action** of Radiological Materials in Soils, Debris, or Structures at Hunters Point Shipyard, San Francisco, California." *2006 Removal Action*, 1. It says, "removal actions will be performed in **less than a year**." *Id*. at 13. Furthermore, it states that "[i]ndividual removal action project schedules will be generated as each site is identified for surveyor removal of radioactive materials. Based on previous removal actions for radioactive materials, **field events are expected to last from 1 to 4 months**." *Id*. at 15 (emphasis added); RFJN, ¶ 1.

And, while removal actions may be extended, that is only if "[t]here is an immediate risk to public health or welfare," and "continued response actions are immediately required to prevent, limit, or mitigate an emergency." 40 C.F.R. § 300.415(b)(5). The MTD fails to state any facts supporting such an immediate, emergency extension. In direct contradiction, the Navy's *Fifth FYR* indicates the opposite, that the remedies are "short-term protective." FAC, ¶ 208.

Not only is there a factual dispute between the parties about this issue; there is a factual dispute between the Defendants. While the Navy asserts to this Court that the cleanup is a nearly two-decade long removal action, EPA's website publicly characterizes the cleanup much

differently. For each parcel where it classifies activities as either "removal" or "remedial actions," all actions described as "removals" relate to activities prior to adoption of a ROD and all classified as "remedial actions" relate to post-ROD activities.[5] RFJN, ¶ 6.

42 U.S.C. § 9604(c)(1) limits removal actions to those that take less than one year and cost less than two million dollars. The NCP states that a "removal action" is a short-term remedy to an immediate threat, to be done "as promptly as possible." 40 C.F.R. § 300.410(b).

The Supreme Court has held that "removal actions" are short-term, temporary responses to an immediate threat as well as actions taken to assess, monitor and evaluate a given site, while "remedial actions" are those measures taken to achieve a permanent solution. *Exxon Corp. v. Hunt,* 475 U.S. 355, 360 (1986). Moreover, "[r]emedial actions are subject to a much higher degree of regulation than that required of removal actions." *Sherwin-Williams Co. v. City of Hamtramck*, 840 F. Supp. 470, 475 (E.D. Mich. 1993).

The Ninth Circuit has also defined removals as "time-sensitive responses to public health threats." *United States. v. W.R. Grace & Co.*, 429 F.3d 1224, 1227 (9th Cir. 2005). Ninth Circuit District courts have applied a multi-factor test to distinguish removals from remedials, including: (1) how soon the final remedial design is expected; (2) whether remedial investigation and feasibility study-related testing and monitoring are ongoing; (3) "whether the action falls within the statutory definition of 'removal' (or "remedial);" and (4) the activity's role in the implementation of the permanent remedy. *Advanced Micro Devices, Inc. v Nat. Semiconductor Corp.*, 38 F. Supp. 2d 802, 812 (N.D. Cal. 1999)*.* Actions consistent with a final remedy are considered "part of the remedial action." *Id.* at 1392.

---

[5] *Superfund Site Hunters Point Naval Shipyard, San Francisco CA: Cleanup Progress,* EPA, https://cumulis.epa.gov/supercpad/SiteProfiles/index.cfm?fuseaction=second.schedule&id=0902722#Schedule.

Nevertheless, Defendants claim the entire eighteen-plus year radiological cleanup, including all the RODs, is a removal action. Janda Decl., ¶ 8. But just because the Navy says it does not make it so, particularly when the consequences of mischaracterizing the cleanup are so lopsidedly self-serving to favor the Navy.

Defendants state "Section 9613(h) bars challenges to removals conducted by federal agencies at federal facilities," citing *Fort Ord Toxics Project*, 189 F.3d at 834 (which they also argue is wrongly decided). MTD, 23–24. By mischaracterizing the remedial actions at the Shipyard as removals, Defendants are attempting to insulate themselves from responsibility and consequences for their roles in the botched cleanup. Most egregious, this mischaracterization is an attempt to prevent this Court's review of their actions.

Defendants cite *W.R. Grace*, arguing it found a multi-year action to be a "removal." However, the Shipyard case is unlike *W.R. Grace*. There, the Court found that "several years" of removals was warranted given the harsh winters at the site and the "sheer magnitude of the initial situation far exceeded the normal situation faced by EPA." 429 F.3d at 1244. The court found that "interim, partial time-sensitive responses taken to counter serious threats to public health" are removal activities. *Id.,* at 1245. Here, the Navy cites no conditions that could prevent removal completion within a year. Nor are there allegations the Navy encountered unexpected conditions, or "serious threats to public health." Finally, there is no evidence the 2006 removal action was extended pursuant to 40 C.F.R. § 300.415(b)(5).

In addition, CERCLA five-year reviews are not required for removal actions, only remedial ones. 42 U.S.C. § 9621(c); *Fort Ord*, 189 F.3d at 834. Nevertheless, the Navy has done five (5) *FYRs* at the Shipyard to date, the last two of which are at issue herein; both included the radiological cleanup.

Accordingly, the Court cannot conclude for purposes of this Motion that the Navy's characterization of the radiological cleanup as a removal action is conclusive, based solely on Ms. Janda's declaration, which is only relevant to challenges under Rule 12(b)(1), not 12(b)(6).

Defendants also allege that APA claims are barred by the statute of limitations. MTD, 24. Like they did in their attack on the Third Claim for allegedly violating the statute of limitations, Defendants ignore a key component of the allegations, that they are "repeated and continuing." Plaintiff incorporates, by this reference, the arguments made herein in response to Defendants' Motion's Fourth Claim regarding the statute of limitations to the Sixth Claim.

Finally, Defendants suggest Plaintiff is trying to bootstrap Parcel F violations into the FAC using phrases like, "including but not limited to." As they note, however, the Parcel F ROD was only recently released. MTD, 25. If Plaintiff decides to file additional claims alleging Parcel F violations, it will follow the appropriate procedures for doing so.

## IV.  CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny the Motion or grant leave to amend.


Dated: December 6, 2024            Respectfully Submitted,


Steven J. Castleman
Attorney for Plaintiff Greenaction for Health and
Environmental Health