## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| GREENACTION FOR HEALTH AND ENVIRONMENTAL JUSTICE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE NAVY, et al.,<br><br>Defendants. | Case No. 3:24-cv-3899-VC-DMR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FEDERAL DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Date:   June 18, 2025<br>Time:   10:00 a.m.<br>Location: Videoconference<br>Judge:   Hon. Vince Chhabria |

DATED: May 2, 2025

Respectfully submitted,

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

 */s/ David Mitchell*

LUCY E. BROWN
DAVID D. MITCHELL
Environmental Defense Section

*Counsel for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................2

I.      Hunters Point history, CERCLA radiological response actions, and retesting................................................................................................................2

II.     The Hunters Point Federal Facilities Agreement................................................6

III.    The Hunters Point Five-Year Reviews ...............................................................6

THE SECOND AMENDED COMPLAINT ...........................................................................6

STANDARD OF REVIEW .....................................................................................................7

ARGUMENT ...........................................................................................................................8

I.      The first claim fails to plead a violation of the Work Plan.................................8

II.     The second claim does not plead a failure to perfom a non-discretionary duty .....................................................................................................................10

III.    The third claim does not plead a violation of the FFA .....................................11

CONCLUSION......................................................................................................................13

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................................. 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................... 7, 13

*Brownell v. Ketcham Wire & Mfg. Co.*,
  211 F.2d 121 (9th Cir. 1954) ................................................................................................ 11

*Coos Cnty. Bd. of Cnty. Comm'rs v. Kempthorne*,
  531 F.3d 792 (9th Cir. 2008) ................................................................................................ 10

*F.A.A. v. Cooper*,
  566 U.S. 284 (2012) .............................................................................................................. 10

*Godecke v. Kinetic Concepts, Inc.*,
  937 F.3d 1201 (9th Cir. 2019) ................................................................................................ 7

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,
  530 U.S. 1 (2000) .................................................................................................................. 10

*Hummel v. Nw. Tr. Servs., Inc.*,
  180 F. Supp. 3d 798 (W.D. Wash. 2016) ), *aff'd*, 740 F. App'x 142 (9th Cir. 2018) .............. 11

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) .................................................................................................. 7

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) .............................................................................................. 13

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) .................................................................................................. 7

**Statutes**

42 U.S.C. § 9604(a) ................................................................................................................... 12

42 U.S.C. § 9620(e)(2) ................................................................................................................. 6

42 U.S.C. § 9621(c) ..................................................................................................... 6, 7, 11, 12

42 U.S.C. § 9659(a)(1) ................................................................................................................. 9

42 U.S.C. § 9659(a)(2) .................................................................................................... 10, 11

**Code of Federal Regulations**

40 C.F.R. § 300.430(a)(1)(i) .................................................................................................. 7

**Federal Registers**

54 Fed. Reg. 48184 (Nov. 21, 1989) ...................................................................................... 2

63 Fed. Reg. 69032 (Dec. 15, 1998) ...................................................................................... 2

64 Fed. Reg. 16351 (Apr. 5, 1999) ........................................................................................ 3

**Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 2

## INTRODUCTION

Since 1984, the U.S. Department of the Navy ("Navy") has been responding to contamination resulting from over 100 years of industrial activities at the former Hunters Point Naval Shipyard ("Hunters Point"). In 1992, the Navy, the U.S. Environmental Protection Agency ("EPA"), and the State of California entered a Federal Facilities Agreement ("FFA") governing the Navy's response actions at Hunters Point under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). Since 2006, the Navy has been responding to radiological contamination under its CERCLA authority to conduct a removal action to address immediate threats to human health and the environment.

The Navy's efforts were disrupted in the 2010s by pervasive fraudulent radiological testing and reporting by a contractor, requiring retesting of the affected parcels under work plans approved by EPA and the California Departments of Toxic Substances Control and Public Health. While conducting retesting at parcel G under the Final Parcel G Removal Site Evaluation Work Plan, including its addendum and revisions (collectively, the "Work Plan"), the Navy discovered that the testing method being used, USEPA Method 905, was not reliable to test for strontium at the low levels at the site. So the Navy changed the Work Plan to use the Eichrom Method for total beta strontium instead.

Then, the Navy coordinated with EPA and California as it conducted a verification study under the Work Plan. That study showed the Eichrom Method for total beta strontium to be reliable for testing at the site where USEPA Method 905 and the Eichrom Method testing only for strontium-90 without an adjustment are not. In the Second Amended Complaint ("SAC"), ECF No. 50, first claim, Plaintiff Greenaction for Health and Environmental Justice ("Greenaction") ignores the Work Plan change and alleges that the Navy's decisions based on

Method 905 testing and Eichrom Method testing only for strontium-90 constitute a Work Plan violation claim under CERCLA's citizen-suit provision. Because the Work Plan requires use of the Eichrom Method for total beta strontium, these allegations fail to state a claim.

In its second claim, Greenaction alleges that the Navy will fail to perform a CERCLA non-discretionary duty in the future to timely complete the sixth five-year review of the remedial actions selected at Hunters Point. But CERCLA's citizen suit provision does not provide a cause of action for this anticipatory claim and neither does the Declaratory Judgment Act. Therefore, the second claim should be dismissed.

Finally, the Court should dismiss the third claim, in which Greenaction alleges that the Navy violated Section 6.1 of the FFA by failing to complete the fifth five-year review in accordance with EPA's CERCLA guidance documents. But Section 6 of the FFA does not apply to five-year reviews and thus does not require compliance with any EPA CERCLA guidance documents for the five-year reviews.

For these reasons, Federal Defendants request that the Court dismiss the first, second, and third claims under Federal Rule of Procedure ("Rule") 12(b)(6) for failure to state a claim.

## BACKGROUND

**I.      Hunters Point history, CERCLA radiological response actions, and retesting**

The Navy acquired Hunters Point during World War II and performed fleet maintenance operations there until 1974. SAC ¶¶ 30-35. In 1974, Naval operations ceased. *Id.* ¶ 35. The Navy then leased Hunters Point until 1986. *Id.* Industrial activities at Hunters Point resulted in widespread distribution of contaminants. *Id.* ¶¶ 31-34. Between 1984 and 1991, the Navy conducted a series of base-wide environmental investigations. 63 Fed. Reg. 69032, 69033 (Dec. 15, 1998). In 1989, EPA added Hunters Point to the National Priorities List. 54 Fed. Reg. 48184

(Nov. 21, 1989). In 1992, the Navy, EPA, and California entered into the FFA under CERCLA Section 9620. SAC ¶ 37. Hunters Point is divided into fourteen parcels for response actions.[1] *Id.* ¶¶ 39-40.

On April 21, 2006, the Navy selected a base-wide removal action for radiological contamination at Hunters Point. *Id.* ¶ 43. The removal action involved surveying radiological contamination, excavating and disposing of soils, and decontaminating or demolishing structures, among other actions. *See* Declaration of David Mitchell ("Mitchell Decl."), Ex. A at 20, 25.[2][3]

The Navy contracted with Tetra Tech EC, Inc. ("Tetra Tech") to perform radiological remediation at Hunters Point. SAC ¶ 47. In October 2012, the Navy discovered discrepancies in Tetra Tech's sampling. *Id.* ¶ 48. The Navy, EPA, and California regulators created work plans to govern the retesting of the parcels subject to Tetra Tech's fraud, including parcel G. *Id.* ¶ 50. For areas where there were sanitary sewers and storm drain trenches,[4] the work plans provide for two phases of retesting. *See* Mitchell Decl., Ex. B at 6-7. In Phase 1, the Navy will excavate and characterize 100% of the soil in one-third of the trenches at the parcels, with the trenches selected being those with the highest potential for contamination. *Id.* In Phase 2, the Navy will

---

[1] The parcels are A-1, A-2, B-1, B-2, C, D-1, D-2, E, E-2, F, G, UC-1, UC-2 and UC-3. SAC ¶ 40. Parcel F covers offshore areas, the "UC" parcels are utility corridors, and the rest of the parcels are land areas that include buildings and structures. *Id.* On April 5, 1999, EPA announced that parcel A was removed from the National Priorities List. 64 Fed. Reg. 16351.

[2] The SAC incorporates by reference the 2006 Basewide Radiological Removal Action, Action Memorandum. SAC ¶ 43.

[3] Cited document pincites are to the PDF page numbers of the relevant exhibit.

[4] The Work Plan also provides for retesting former building sites and crawl space areas, as well as building investigations, which are not detailed in this motion because the SAC does not contain allegations related to these portions of the Work Plan relevant to claim 1. SAC ¶¶ 98-105.

conduct soil sampling and a complete radiological surface scan of accessible areas of the parcels. *Id.* The Navy will re-excavate 100% of Phase 2 trenches if contamination is identified in Phase 1. *Id.* at 9

The Work Plan originally listed USEPA Method 905 to retest for strontium-90 at parcel G. SAC ¶ 51. Phase 1 retesting using Method 905 produced some results that preliminarily indicated strontium-90 above the remedial goal in soil samples. *Id.* However, the Navy determined Method 905 was not reliable to test for strontium at the low levels being detected at parcel G. *See* Mitchell Decl., Ex. C at 16. Notably, sample results could not be reproduced in subsequent testing. *See id.*, Ex. C at 14, Ex. D at 2. The Navy then identified the Eichrom Method[5] as a more accurate method to test for strontium at parcel G. *See id.*, Ex. C at 13, Ex. D at 2. The Navy coordinated with EPA and California regulators to execute a series of amendments to the Work Plan through field change requests that changed the testing procedure to collect data for project decisions at parcel G to the Eichrom Method for total beta strontium ("Eichrom Method TBS"). *See id.*, Ex. C at 14-16, Ex. E at 4. The Work Plan provides for changes by field change request when necessary. *See, e.g., id.* Ex. B at 10.

First, the Navy replaced Method 905 with the Eichrom Method to test for strontium-90 and make project decisions under the Work Plan through Field Change Request 6. *See id.*, Ex. D at 2, 5. In Field Change Request 7, Revision 1, the Navy changed the Work Plan to use the Eichrom Method to measure for total beta strontium, not just strontium-90, to make project decisions for parcel G retesting. *See id.*, Ex. E at 4. This change specified that total beta strontium results would be compared to the strontium-90 remedial goal to make project

---

[5] The Eichrom Method is formally referenced as Eurofins-TestAmerica SOP No. ST-RC-0058, "Sample Preparation for Strontium-89, Strontium-90 and Total Strontium Using Extraction Chromatography." *See* Mitchell Decl., Ex. D at 2.

decisions.  *See id.*; *see also id.*, Ex. C at 16.  This approach is conservative because testing for total beta strontium measures strontium-89 and strontium-90 together and compares the combined result to the strontium-90 remedial goal.  *See id.*, Ex. C at 14-15, Ex. E at 4.  Testing only for strontium-90 using the Eichrom Method was producing artificially higher results because lead-210 was comingled in the parcel G soil samples and interfering with the strontium-90 results.  *See id.*, Ex. E at 4.

      The Navy then changed the Work Plan in Field Change Request 8 to perform a method-verification study supporting and confirming the decision to use Eichrom Method TBS for parcel G retesting and project decisions.  *See id.*, Ex. F at 4-5; *see generally id.*, Ex. C.  As part of the verification study, the Navy performed multiple studies on the reliability of Method 905, Eichrom Method testing only for strontium-90, and Eichrom Method TBS.  *See id.*, Ex. C at 15-16.  Method 905 failed the verification studies, and the Navy concluded it was not a reliable analytical method to test for total beta strontium or strontium-90 at the levels being detected at parcel G.  *See id.* at 16.  The Eichrom Method testing only for strontium-90 failed unless a method blank population substraction was applied.  *See id.* at 15-16.  The Eichrom Method TBS passed the verification studies, and the Navy concluded that it was the most accurate and precise method available to test for strontium at parcel G.  *See id.*  Thus, the Navy confirmed its decision to use the Eichrom Method TBS for retesting at parcel G and use those results for project decisions.  *See id.* at 16.  EPA approved the method-verification study and California agreed with the Navy's decision to use Eichrom Method TBS for soil sampling analysis.  Federal Defendants' Second Request for Judicial Notice, ECF No. 60, Nos. 1-3.  There were no sample results that exceeded the parcel G remedial goals for strontium-90 using Eichrom Method TBS.  SAC ¶¶ 55, 104; Mitchell Decl., Ex. C at 16.

## II.     The Hunters Point Federal Facilities Agreement

The FFA is an agreement between the Navy, EPA, and California "for the expeditious completion . . . of all necessary remedial action" at Hunters Point.  42 U.S.C. § 9620(e)(2). Section 6.1 of the FFA provides:  "[T]he Parties agree to perform the tasks, obligations and responsibilities *described in this Section* in accordance with CERCLA and CERCLA guidance and policy."  Mitchell Decl., Ex. G § 6.1 (emphasis added).  The tasks listed in Section 6.2 are (1) remedial investigations, (2) feasibility studies, (3) all response actions, (4) operation and maintenance of response actions, and (5) federal and state natural resources trustee notification and coordination.  *Id.* § 6.2.  Five-year reviews are not a task, obligation, or responsibility described in Section 6 of the FFA.  *See id.* § 6.  Rather, five-year reviews are specifically addressed in Section 27 of the FFA, which does not reference CERCLA guidance and policy. *See id.* § 27.

## III.    The Hunters Point Five-Year Reviews

When a remedial action leaves hazardous substances at a site, a review every five years is required "to assure that human health and the environment are being protected by the remedial action being implemented."  42 U.S.C. § 9621(c).  The Navy has completed all required five-year reviews thus far, the most recent of which was completed in 2024.  SAC ¶ 63.  Greenaction acknowledges that the sixth five-year review is not due yet.  *Id.*

## THE SECOND AMENDED COMPLAINT

The SAC asserts four claims: (1) violation of the parcel G retesting Work Plan (which Greenaction refers to as a "retesting agreement"); (2) a future violation of a non-discretionary duty if the Navy fails to complete the sixth five-year review by July 8, 2028; (3) failure to comply with the FFA by deviating from EPA's CERCLA's guidance documents in the fifth five-

year review; and (4) failure to complete an adequate fifth five-year review for Hunters Point in violation of 42 U.S.C. § 9621(c) and 40 C.F.R. § 300.430(a)(1)(i).  Defendants are moving to dismiss the first, second, and third claims.

## STANDARD OF REVIEW

Rule 12(b)(6) permits a court to dismiss a claim for "failure to state a claim upon which relief can be granted."  A complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555 (citations and internal quotation marks omitted).  The plausibility requirement demands "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if a plaintiff fails to allege a viable legal theory or sufficient facts under a viable legal theory.  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019).  The court may consider documents incorporated by reference in the complaint or matters subject to judicial notice.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Courts need not accept the truth of allegations contradicting matters properly subject to judicial notice or by exhibit.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citations omitted).  Courts also are not required to accept as true conclusory allegations, unwarranted deductions, or unreasonable inferences.  *Id.*

# ARGUMENT

I.    **The first claim fails to plead a violation of the Work Plan.**[6]

The SAC claims that the Navy is in violation of the Work Plan because the Navy has not yet conducted 100% soil recharacterization at parcel G in Phase 2 of retesting. SAC ¶¶ 51-52, 98-105. In support, the SAC alleges that the Work Plan requires the Navy to conduct 100% retesting in Phase 2 because Phase 1 retesting returned results above the strontium-90 remedial goal using Method 905 and the Eichrom Method testing only for strontium-90. *Id.* ¶¶ 51-55, 98-105.

These allegations do not state a claim. As described above, the Work Plan requires the use of the Eichrom Method TBS for retesting and project decisions at parcel G, not Method 905 or the Eichrom Method testing only for strontium-90. The original Work Plan specified Method 905 as the testing method. *See supra* at 4. But the Navy, with approval of EPA and California, changed the Work Plan through field change requests to use the Eichrom Method TBS for retesting at parcel G and uses those testing results for project decisions. *See supra* at 4-5.

The Navy also performed a method-verification study under the Work Plan to support the change that EPA approved and with which California agreed. *See supra* at 5. Thus, Greenaction's allegations about testing results using Method 905 cannot trigger 100% retesting in Phase 2 and do not plead a violation of the Work Plan. Nor do Greenaction's allegations referencing Eichrom Method testing only for strontium-90. *See* SAC ¶¶ 55, 104. The Eichrom Method TBS, the operative testing method under the Work Plan, did not return any results that

---

[6] Defendants rely on the allegations in the SAC, the Work Plan, the Final Technical Memorandum: Strontium Analysis, Parcel G ("Strontium Memo"), and the Federal Defendants' Second Request for Judicial Notice, ECF No. 60, for this claim. The Work Plan and Strontium Memo are incorporated by reference in the SAC. *See* SAC ¶¶ 50, 52, 100. The Work Plan includes Field Change Requests 6, 7 Revision 1, and 8. *See* Mitchell Decl., Exs. D, E, F.

exceeded the parcel G remedial goals for strontium-90, SAC ¶¶ 55, 104; Mitchell Decl., Ex. C at 16, which does not trigger 100% soil recharacterization in Phase 2 retesting at parcel G, *see* Mitchell Decl., Ex. B at 6-7, 9.

Greenaction's allegations that the Navy improperly invalidated data do not rescue this claim. *See* SAC ¶ 104. That is because Greenaction's claim is a CERCLA citizen-suit that seeks to enforce compliance with the Work Plan. *Id.* ¶¶ 100-04. Greenaction cannot plead such a claim without identifying a violation of the effective terms of the Work Plan. 42 U.S.C. § 9659(a)(1) (imposing liability for *violations*). The SAC does not allege that the Navy's change to the Work Plan violated any law or that the Eichrom Method TBS is not the governing test method for retesting at parcel G and project decisions. *See* SAC. Instead, the Complaint alleges that the Navy "reneged on the [Work Plan]." SAC ¶ 104. But the Navy did not "renege" on the Work Plan; it lawfully (and reasonably) changed the terms. *See supra* at 4-5. The SAC does not allege otherwise. *See* SAC.

In addition, Greenaction's single allegation against EPA in the first claim does not state a violation of the Work Plan by EPA. *See* SAC ¶ 105. In fact, the allegations about EPA are not related to the terms of the Work Plan or compliance at all. *Id.* Instead, Greenaction alleges that EPA's "improper invalidation" of testing results failed to "assure the cleanup is and remains protective." *Id.* Greenaction's allegations do not identify any specific provision of CERCLA, the FFA, or the Work Plan that EPA violated. *See* SAC. Instead, Greenaction repeats the same error it made in the first amended complaint by seeking to challenge EPA's oversight of the Navy's work. *See id* ¶ 105. The threadbare allegations against EPA cannot state a claim for violations of CERCLA, the FFA, or the Work Plan.

## II.   The second claim does not plead a failure to perform a non-discretionary duty.[7]

The SAC alleges, under Section 9659(a)(2), that the Navy will complete the sixth five-year review at Hunters Point after the date Greenaction has determined it is due; therefore, according to Greenaction, the Navy will fail to perform that nondiscretionary duty in the future. SAC ¶¶ 106-113.  But CERCLA's citizen-suit provision does not provide a cause of action to sue for future failures to perform a nondiscretionary duty.  CERCLA provides a right to sue "where there *is* alleged a failure . . . to perform any act or duty under [CERCLA] . . . which is not discretionary . . . ." 42 U.S.C. § 9659(a)(2) (emphasis added).  The plain language and syntax require the existence of a failure to perform the required duty, not potential future failures. "Where there is alleged a failure . . . to perform . . . [a nondiscretionary duty]," *id.,* cannot mean (possibly) failing to perform a duty in the future.  *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (internal citations and quotations omitted).  Allegations that the Navy will fail to complete the sixth five-year review in the future do not state a nondiscretionary duty claim under Section 9659(a)(2).

If the clear text does not mandate dismissal (it does), then Section 9659(a)(2)'s operation as a limited sovereign immunity waiver does.  *See* 42 U.S.C. § 9659(a)(2); *cf. Coos Cnty. Bd. of Cnty. Comm'rs v. Kempthorne*, 531 F.3d 792, 801 (9th Cir. 2008) (noting that the Endangered Species Act non-discretionary duty citizen-suit right-to-sue is a limited sovereign immunity waiver).  Sovereign immunity waivers must be strictly construed with all ambiguities interpreted in favor of immunity.  *F.A.A. v. Cooper*, 566 U.S. 284, 290 (2012).  Even if ambiguous, the

---

[7] Defendants rely only on the allegations in the SAC for this claim.

sovereign immunity review standard does not allow extending Section 9659(a)(2) suits to claims alleging a future failure to perform a nondiscretionary duty.

Finally, Greenaction cannot rely on the Declaratory Judgment Act for a cause of action here. The Declaratory Judgment Act provides a remedy in cases where a cause of action exists but does not create an independent cause of action. *Hummel v. Nw. Tr. Servs., Inc.*, 180 F. Supp. 3d 798, 810 (W.D. Wash. 2016), *aff'd*, 740 F. App'x 142 (9th Cir. 2018). And even if the Declaratory Judgment Act provided an independent cause of action, it does not waive sovereign immunity and thus does not authorize suit against the Navy. *Brownell v. Ketcham Wire & Mfg. Co.*, 211 F.2d 121, 128 (9th Cir. 1954) ("It is true that the Declaratory Judgment Act [] is not a consent of the United States to be sued . . . .").

### III.     The third claim does not plead a violation of the FFA.[8]

The third claim alleges that the fifth five-year review violated Section 6.1 of the FFA because the Navy did not act in accordance with EPA CERCLA guidance documents. SAC ¶¶ 119-20. Section 6.1 of the FFA requires the Navy "to perform the tasks, obligations and responsibilities described *in this Section* in accordance with . . . CERCLA guidance and policy . . . ." Mitchell Decl., Ex. G § 6.1 (emphasis added). The tasks, obligations, and responsibilities identified in Section 6.2 are remedial investigations, feasibility studies, response actions and their operation/maintenance, and certain notifications and coordination. *Id.* § 6. Section 6 does not apply to the five-year reviews. *See id* § 6; *see also id.* § 27 (titled "Five Year Review").

CERCLA makes clear that five-year reviews are separate from actual response actions. The lead agency must review certain remedial actions at least every five years. 42 U.S.C.

---

[8] Defendants rely on the allegations in the SAC and EPA documents incorporated by reference in the SAC for this claim.

§ 9621(c). If the lead agency determines "that action is appropriate at such site in accordance with section 9604" the lead agency must take that action. *Id.* Section 9604 provides authority to take response actions, the five-year review provision does not. *Compare* 42 U.S.C. § 9604(a), *with id.* § 9621(c). So a five-year review may lead to further response actions, but it is not a response action itself.

Even if Section 6 applied to five-year reviews, Greenaction did not satisfy the minimum pleading standard this Court highlighted in its order on Defendants' motion to dismiss the first amended complaint. ECF No. 44 at 5. As an initial matter, one of the documents Greenaction cites, [sic] *Citizen's Guide to Capping*, SAC ¶ 119(8), provides general information to the public and therefore is not the kind of document that could be enforceable through the FAA. As it explains: "This fact sheet is intended solely as general information to the public. It is not intended, nor can it be relied upon, to create any rights enforceable by any party with the United States." Mitchell Decl., Ex. H at 3.

All the other EPA documents that Greenaction cites, SAC ¶ 119(1)-(7), (9), provide for site-specific flexibility. *See* Mitchell Decl., Ex. I at 6; Ex. J at 15-16; Ex. K at 4, 12, 23; Ex. L at 3; Ex. M at 2-3; Ex. N at 2; Ex. O at 2 n.1; Ex. P at 19 (noting the minimum performance timeframe for CERCLA facility cover systems is often, but not always, assumed to be 30 years)[9]. As the Court directed, Greenaction had to plead how any deviations from the guidance documents "were inappropriate or unjustified by site-specific conditions at Hunters Point." ECF No. 44 at 5. Instead, Greenaction alleges that it was arbitrary, capricious, or unlawful to deviate from the guidance documents without sufficient explanation. SAC ¶ 120. Greenaction confuses

---

[9] Greenaction's only alleged violations of EPA's Draft Technical Guidance for RCRA/CERCLA Final Covers are about the cover system lifetime. *See* SAC ¶ 119(9).

Memorandum of Points and Authorities in Support of Motion to Dismiss
Case No. 3:24-cv-3899-VC-DMR                                                                                           12

the correct standard for a claim based on *violations* of the FFA.  SAC ¶¶ 114-120.  Greenaction must allege facts to support its claim that deviations from the non-binding guidance documents are, in fact, inappropriate or unjustified, not that the Navy failed to adequately explain its actions.  *See* ECF No. 44 at 5.

Finally, Greenaction attempts to broaden the third claim beyond specific alleged violations by using phrases like "among other violations."  SAC ¶¶ 119(1), (2), (4).  A complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Greenaction's broadening phrases do not provide notice or plead a plausible claim beyond the specific violations pleaded in the SAC.  *See Twombly*, 550 U.S. at 555.

## CONCLUSION

For the reasons above, the Court should dismiss the first, second, and third claims here.