Claudia Polsky (CBN 185505)
Steven J. Castleman (CBN 95764)
ENVIRONMENTAL LAW CLINIC
UC Berkeley School of Law
354 Law Building
Berkeley, CA 94704
Tel: (510) 664-4761
Email: scastleman@clinical.law.berkeley.edu

Michael R. Lozeau (CBN 142893)
LOZEAU DRURY LLP
1939 Harrison Street, Suite 150
Oakland, CA 84612
Tel: (510) 836-4200
Email: michael@lozeaudrury.com

Attorneys for Plaintiff Greenaction
for Health and Environmental Justice

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| GREENACTION FOR HEALTH AND ENVIRONMENTAL JUSTICE, a non-profit corporation,<br><br>            Plaintiff,<br>     v.<br><br>UNITED STATES DEPARTMENT OF THE NAVY, a military department and agency of the United States; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, a United States government agency,<br><br>            Defendants. | Case No. 3:24-cv-03899 (VC)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL DISMISSAL**<br><br>Hearing date:   June 18, 2025<br>Time:           10:00 a.m.<br>Location:       Videoconference<br>Judge:          Hon. Vince Chhabria |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .....................................................................................................................1

STANDARD OF REVIEW ........................................................................................................1

ARGUMENT .............................................................................................................................2

    I.    The First Claim Should Not Be Dismissed Under Rule 12(b)(6) Because Plaintiff Has Pled Sufficient Legal Theories and Factual Allegations ....................2

    II.    The Second Claim Should Not Be Dismissed Because Citizens May Sue for Anticipated Violations ................................................................................................4

    III.    The Third Claim Should Not Be Dismissed Because the FFA Makes Otherwise Discretionary EPA Guidances Mandatory ...............................................................8

        A.    The SAC Properly Pleads Failure to Accomplish Tasks Required by EPA Guidances Made Mandatory by the FFA....................................................10

CONCLUSION .......................................................................................................................15

i

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL DISMISSAL
Case No. 3:24-cv-03899 (VC)

## **TABLE OF AUTHORITIES**

### **Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................................................1

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................................................................1

*Cascadia Wildlands v. Scott Timber Co.*,
   105 F.4th 1144 (9th Cir. 2024)............................................................................................5, 6

*Coos Cnty. Bd. of Cnty. Comm'rs v. Kempthorne*,
   531 F.3d 792 (9th Cir. 2008)..................................................................................................7

*Dep't of Homeland Sec. v. Regents of the St. of Cal.*,
   591 US 1 (2020) .....................................................................................................................4

*Epstein v. Washington Energy Co.*,
   83 F.3d 1136 (9th Cir. 1996)..................................................................................................1

*F.A.A. v. Cooper*,
   566 U.S. 284 (2012) ...............................................................................................................7

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,
   530 U.S. 1 (2000) ...................................................................................................................6

*Hummel v. Nw. Tr. Servs., Inc.*,
   180 F. Supp. 3d 798 (W.D. Wash. 2016), *aff'd*, 740 F. App'x 142 (9th Cir. 2018).............8

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008)................................................................................................1

*Michigan v. EPA*,
   576 U.S. 743 (2015) ...............................................................................................................4

*SEC v. Chenery Corp.*,
   318 U.S. 80 (1943) .................................................................................................................4

### **Statutes**

16 U.S.C. § 1540 ............................................................................................................................5

42 U.S.C § 9601 .............................................................................................................................9

...

42 U.S.C. § 9604 ...................................................................................................9, 10

42 U.S.C. § 9621 ........................................................................................................10

42 U.S.C. § 9659 ..........................................................................................................4

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(6) .......................................................................................1, 2, 4

## INTRODUCTION

Plaintiff Greenaction files this Memorandum of Points and Authorities in Opposition to Defendants' Motion for Partial Dismissal ("Defs. Mot."). Defendants seek dismissal of three of the four claims in the Second Amended Complaint ("SAC"). They do not seek dismissal of the Fourth Claim, which alleges that the Navy violated CERCLA, the NCP, and the FFA by failing to properly assure that the remedies at Hunter's Point Naval Shipyard ("HPNS") are and remain protective.

## STANDARD OF REVIEW

Defendants move to dismiss Plaintiffs' First, Second, and Third Claims for "failure to state a claim upon which relief can be granted." Defs. Mot. at 2 (citing Fed. R. Civ. P. 12(b)(6)). When a court considers such a motion, factual allegations set forth in the complaint "are taken as true and construed in the light most favorable to [p]laintiffs." *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). A complaint "does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, it must include "enough facts to state a claim to relief that is plausible on its face." *Id.* 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Ninth Circuit has held that "[d]ismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

# ARGUMENT

**I.     The First Claim Should Not Be Dismissed Under Rule 12(b)(6) Because Plaintiff Has Pled Sufficient Legal Theories and Factual Allegations**

Between the complaint and the *60 Day Notice of Intent to Sue* ("Notice") incorporated into it, Greenaction has pled sufficient facts and legal theories for the Court to deny the motion to dismiss under Rule 12(b)(6). In arguing that the SAC cannot plead a claim "without identifying a violation of the effective terms of the Work Plan," Defendants misread Plaintiff's First Claim. It *does* identify violations of the Work Plan–and indeed, identifies multiple such violations.

First, Plaintiff's claim alleges that the Work Plan requires 100% soil retesting if Phase 1 retesting finds any contamination. SAC ¶¶ 50, 100. It then alleges that sixty-two samples exceeding the remedial goals were identified using the test method specified by the original Work Plan. SAC ¶¶ 51, 102. The SAC also alleges that "[r]ather than conducting 100% retesting of Tetra Tech's purported soil remediation as the *Parcel G Retesting Plan* requires, the Navy instead sought to *invalidate* the Sr-90 [strontium 90] data." SAC ¶ 52. (Emphasis in original.) The SAC also states that "[a]t the same time the Navy was attempting to use the Eichrom method to *invalidate* its own EPA-approved data, the Navy concealed that the Eichrom method *confirmed* Sr-90 exceedances. More than 27% exceeded the Sr-90 remediation goals." SAC ¶ 54. (Emphasis in original.) The SAC alleges the Navy improperly invalidated the Sr-90 exceedances and failed to state an adequate factual basis to do so. SAC ¶ 56.

Perhaps recognizing the weakness of its argument that the First Claim lacks examples of deviation from the Work Plan, Defendants argue that any such deviations were lawful and Greenaction does not allege otherwise. Defs. Mot. p. 9. However, the SAC not only alleges the deviations were improper and unlawful, it also alleges the Navy's decision not to accept the Sr-

90 results from the EPA-approved method was based on untrue statements. For example, the Navy claims the Sr-90 remedial goal was "uniquely low." The Navy disregards that the 2006 remedial goal was identical to the 2004 and 2007 EPA-published soil default PRGs and that in 2023, EPA published new default PRGS lowering the Sr-90 default by more than an order of magnitude. SAC ¶ 57. The SAC also alleges the Navy's decision improperly relied on Tetra Tech data the Navy and EPA publicly discarded three years before the exceedances were identified. SAC ¶ 58. The same evidence also would also be relevant to the challenge to EPA's approval.

The SAC alleges Defendant EPA improperly approved the Navy's discarding of the results of the approved EPA method, Method 905: "EPA has wrongfully approved the improper invalidation of the Sr-90 exceedances, violating its independent obligation under the FFA to assure the cleanup is and remains protective." SAC ¶ 105. Further details of the allegations are contained in the 60-day notice, Exhibit 1 to the Complaint. Notice, pp. 5-18 and 20-21.

The Navy has not publicly released the full administrative record. Greenaction expects discovery to bolster the SAC allegations alleging the improper invalidation of the Sr-90 exceedances by the Navy, with EPA's improper approval. If these expectations are incorrect, Greenaction will revisit the claim. But whether the Navy and EPA acted lawfully, as they allege, or unlawfully, as Greenaction alleges, Defendants' argument at this stage must fail because this is a fact-dependent dispute that cannot properly be resolved on a motion to dismiss.

Furthermore, as the dismissal motion itself concedes, the Navy's Sr-90 Verification Study[1] "discovered" that Method 905 was not reliable for testing strontium "at the low levels at the site," such that "the Navy changed the Work Plan to use the Eichrom Method for total beta

---

[1] *Final Technical Memorandum: Strontium Analysis, Parcel G* ("Sr-90 Verification Study") Sept. 25, 2024.

strontium instead." Defs. Mot. p. 1. "Then," the Motion states, the Navy "conducted a verification study" to justify its *prior* actions. *Id*.

Well-established case law requires that a reasoned explanation justifying changing the methods be done at the time decisions are made, not afterward. It is a "foundational principle of administrative law" that judicial review of agency action is limited to "the grounds that the agency invoked when it took the action." *Michigan v. EPA*, 576 U.S. 743, 758 (2015), citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943). "When an agency's initial explanation 'indicate[s] the determinative reason for the final action taken,' the agency may elaborate later on that reason (or reasons) but may not provide new ones." *Dep't of Homeland Sec. v. Regents of the St. of Cal.*, 591 US 1, 21 (2020), citing *Camp v. Pitts*, 411 U.S. 138, 143. *Post hoc* reasoning is impermissible. *Id*.

Here, the verification study was done *post hoc*.

Accordingly, Greenaction has pled sufficient facts and legal theories for the Court to deny the motion to dismiss the First Claim under Rule 12(b)(6).

## II.   The Second Claim Should Not Be Dismissed Because Citizens May Sue for Anticipated Violations

The Second Claim seeks to compel the Navy to publish its upcoming five-year review within the statutory deadline, something it has failed to do five times. The Navy has announced—in writing and despite EPA's request that it correct the error—that it will not publish its *Sixth Five-Year Review* by the statutory deadline. The Navy has decided to unilaterally extend the statutory deadline by more than a year. SAC ¶¶ 110–113.

The Navy argues, "CERCLA's citizen suit provision does not provide a cause of action for this anticipatory claim," focusing on the phrase in 42 U.S.C. § 9659(a)(2), "where there *is*

alleged a failure" to perform a nondiscretionary duty. Defs. Mot. p. 2. (Emphasis in original.) It asserts the present tense precludes a claim requiring the Navy to comply with its five-year review deadline, July 8, 2028. SAC ¶¶ 111–112, despite its unbroken history of progressively longer failures to meet the deadline and its existing decision to put off publication until July 30, 2029. SAC ¶¶ 63, 112.

The Ninth Circuit has rejected Defendant's interpretation of identical language authorizing citizen enforcement actions under the federal Endangered Species Act ("ESA").

The ESA contains the same language as CERCLA authorizing citizen suits:

> "[A]ny person may commence a civil suit on his own behalf-- … (A) to enjoin any person, including the United States and any other governmental instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution), who **is alleged to be in violation** … or … (C) against the Secretary **where there is alleged a failure** of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary." 16 U.S.C. § 1540(g)(1) (emphasis added).

16 U.S.C. § 1540(g)(1) (emphasis added).

Despite the present tense language in the ESA, in *Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144 (9th Cir. 2024), the Ninth Circuit expressly allowed a citizen plaintiff to bring an action for anticipatory claims under the ESA to prevent the "take" (i.e., harm to) an endangered species by a planned logging project. That case involved a challenge to the adequacy of the plaintiff's 60-day notice and whether a citizen plaintiff could serve sufficient notice prior to the occurrence of an alleged statutory violation. *Id.* 1149. The Court wrote that, "[O]ur precedent clearly supports ESA citizen-suits for prospective violations, suggesting that anticipatory notices may be sufficient in specific situations." *Id.* 1156. It found that where an anticipatory notice was sent and contained sufficient information for the noticed party to identify

and abate the prospective violation, the court was authorized to entertain plaintiff's claim. *Id*. 1154–56.

Greenaction alleges ample facts in support of its claim seeking to prevent the Navy's announced plan to continue violating the deadline for its next HPNS five-year review. The Navy has never published a five-year review on time. "Every *FYR* [*Five-Year Review*] has been late. While some were late by only a month or more, they have been getting later, and the current, *Fifth FYR* arrived a year late, in 2024 instead of 2023." SAC ¶¶ 6, 63. The Navy has already decided that its *Sixth FYR* will be published on or about July 30, 2029 – more than one-year beyond the statutory deadline. SAC ¶ 112. Consistent with the authority granted by CERCLA's citizen suit provision, Greenaction has properly alleged an anticipatory claim for which relief may be granted. *See Cascadia Wildlands*, 105 F.4th at 1156.

The Navy's citation to *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) is not relevant.

*Hartford Underwriters* involved bankruptcy. *Id*. It does not negate the Ninth Circuit's recognition that the citizen suit language of CERCLA and other environmental laws allow for enforcement of prospective violations. *Cascadia Wildlands*, 105 F.4th at 1154–56. Considering the Navy's history of deadline violations and its public statement that it will violate the deadline for the sixth time, SAC ¶¶ 6, 63, 112, there are ample grounds for the Court to permit an anticipatory claim to ensure the Navy complies with the Congressionally mandated deadline.

Under the Navy's theory, there is nothing this Court or citizens can do to compel it to comply with the law; federal facilities can forever ignore CERCLA's statutory deadline without fear of any legal consequences. The Navy can commit repeated violations and broadcast that it has decided to do it again, secure in the knowledge it has effective immunity – a truly absurd

result that neuters five-year reviews and cannot be the law. EPA cannot sue federal agencies. If citizens cannot enforce CERCLA's five-year review provisions, no one can.

The Navy's invocation of sovereign immunity is likewise unavailing. Invoking the ESA case, *Coos Cnty. Bd. of Cnty. Comm'rs v. Kempthorne*, 531 F.3d 792, 801 (9th Cir. 2008), Defendants argue that there is no waiver of sovereign immunity here. But *Coos County* turned on the fact that plaintiff Coos County had not filed a petition that was a statutory prerequisite to bringing its claim, i.e., Congress had only waived sovereign immunity where putative citizen-plaintiffs had first exhausted certain remedies. *Coos County* is irrelevant to the one at hand, because there is no analogous section requiring Greenaction to take an action like filing a formal petition before filing a citizen's suit.[2] The Court held, however, that citizens' suit provisions waive sovereign immunity: "the citizen suit provisions of those statutes act to waive federal sovereign immunity." *Id*. 801. The Court focused on a requirement of the ESA that applies only when a petition has been filed. Coos County had not filed a petition, and the County had not pled a relevant claim, so sovereign immunity was not waived. *Id.* There is no analogous CERCLA

---

[2] For similar reasons, the Navy's invocation of the Privacy Act case, *F.A.A. v. Cooper*, 566 U.S. 284, 290 (2012), (Defs. Mot. pp. 10-11) is misplaced because the Navy over-generalizes from a court's statute-specific textual and contextual analysis. In *F.A.A v. Cooper*, the court held that where civil remedy provisions of the Privacy Act only expressly allowed recovery of "actual damages," damages for mental and emotional distress were impliedly unavailable due to defendant's sovereign immunity. Although the Court stated that the "scope of Congress' waiver of sovereign immunity must be clearly discernible from the statutory text in light of traditional interpretive tools," and textual ambiguity must be resolved in favor of the Government, that interpretive precept has no bearing on the CERCLA citizen suit provision before this Court. There is no immunity-relevant textual ambiguity for this Court to resolve, as CERCLA's citizen suit provision plainly waives sovereign immunity where plaintiffs seek injunctive relief (such as enforcement of a deadline). Here, Greenaction does not seek damages. Like *Coos County*, *F.A.A. v. Cooper* is inapposite.

section requiring Greenaction to take an action like filing a formal petition. As a result, this case does not provide support for Defendant's argument.

Finally, the Navy misconstrues plaintiff's invocation of the Declaratory Judgment Act ("DJA"). Plaintiff identifies the DJA as the basis for the *remedy* of a declaration stating the Navy has violated the law, not as a basis for a cause of action. *Hummel v. Nw. Tr. Servs., Inc.*, 180 F. Supp. 3d 798, 810 (W.D. Wash. 2016), *aff'd*, 740 F. App'x 142 (9th Cir. 2018), stands for the proposition that "the Declaratory Judgment Act provides a remedy in cases where a cause of action exists but does not create an independent cause of action." Defs. Mot. p. 11. This is both true and proves nothing. Here, Greenaction seeks a declaration that the Navy has violated and continues to violate the law, as a prelude to an injunction compelling compliance with the next five-year review deadline. This prayer for relief is wholly consistent with *Hummell*.

Accordingly, Greenaction has properly pled the Second Claim, and it should be allowed to proceed.

### III. The Third Claim Should Not Be Dismissed Because the FFA Makes Otherwise Discretionary EPA Guidances Mandatory

Because each successive five-year review is a response action under Section 6 of the FFA, Greenaction has pled a valid claim to enforce the FFA's requirement that the Navy comply with all CERCLA Guidance. SAC ¶¶ 65-97, 114–120. Nevertheless, the Navy asserts that, "Section 6 of the FFA does not apply to five-year reviews and thus does not require compliance with any EPA CERCLA guidance documents for the five-year reviews." Defs. Mot. p. 2.

As the Navy correctly notes, Section 6 of the FFA states, "The tasks, obligations, and responsibilities identified in Section 6.2 are remedial investigations, feasibility studies, **response actions** and their operation/maintenance, and certain notifications and coordination." Decl. of

David Mitchell, Ex. G, p. 9 (ECF No. 61-9) (emphasis added). The Navy argues that none of the listed tasks include five-year reviews. Defs. Mot. p. 11.

The Navy is incorrect. There are two types of CERCLA "response actions," removal actions and remedial actions. 42 U.S.C § 9601(25). Although the FFA does not define "response actions," CERCLA's definition of "removal" encompasses five-year review tasks.

42 U.S.C § 9601(23) defines "remove" or "removal" to mean:

> the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, **such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances**, the disposal of removed material, **or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release.** . . . **action taken under section 9604(b)** of this title, and any emergency assistance which may be provided under the Disaster Relief and Emergency Assistance Act.

*Id.* (emphasis added).

In turn, 42 U.S.C. § 9604(b)(1) states:

> Whenever the President is authorized to act pursuant to subsection (a) of this section, or whenever the President has reason to believe that a release has occurred **or is about to occur**, or that illness, disease, or complaints thereof may be attributable to exposure to a hazardous substance, pollutant, or contaminant and that a release may have occurred or be occurring, he may undertake such **investigations, monitoring, surveys, testing, and other information gathering as he may deem necessary or appropriate to identify the existence and extent of the release or threat thereof,** the source and nature of the hazardous substances, pollutants or contaminants involved, **and the extent of danger to the public health or welfare or to the environment.** In addition, the President **may undertake such planning**, legal, fiscal, economic, engineering, architectural, **and other studies or investigations as he may deem necessary or appropriate to plan and direct response actions**, to recover the costs thereof, and to enforce the provisions of this chapter. (Emphasis added.)

*Id.* (emphasis added).

The Motion fails to address the definition of removal action, and Section 9604, despite their specific language describing actions necessary to conducting five-year reviews, including studies, investigations, monitoring, and gathering "other information" needed to identify **"the extent of danger to the public health or welfare or to the environment."** It also includes planning, and "other studies or investigations" necessary to "plan and direct response actions." Five-year reviews are studies to assess continuing protectiveness and, if the remedy is not protective, to plan and implement appropriate response actions to obtain protectiveness. 42 U.S.C. § 9621(c). Under any fair reading of the definition of 'removal,' and Section 9604, five-year reviews qualify."

Without citation to any statutes, regulations or caselaw, the Navy manufactures a term never used by CERCLA, the NCP or the FFA: "actual response actions." Though it fails to define the term, it posits that five-year reviews are not "actual." The Navy makes a wholly unsupported leap, asserting, "CERCLA makes clear that five-year reviews are separate from **actual** response actions." Defs. Mot. p. 11 (emphasis added).

This is not the case. The broad definition of "removal," and § 9604(b)(1) encompass five-year reviews. Synthesizing these sections establishes that CERCLA five-year reviews are response actions and the FFA applies to them.

      **A.**    **The SAC Properly Alleges the Navy's Failure to Accomplish Tasks Required by EPA Guidances Made Mandatory by the FFA**

As the FFA states, the parties agreed contractually to conduct the cleanup "in accordance with CERCLA and CERCLA guidance and policy." They committed to making normally advisory EPA guidances mandatory.

Defendants' Motion argues that, assuming the FFA applies to five-year reviews, Greenaction did not comply with the Court's order regarding the Motion to Dismiss the First Amended Complaint: "As the Court directed, Greenaction had to plead how any deviations from the guidance documents 'were inappropriate or unjustified by site-specific conditions at Hunters Point.'" Defs. Mot. p. 12.

However, while the SAC alleges multiple guidance violations—the Third Claim lists nine (9)—the Motion only mentions a single guidance, *Citizen's Guide to Capping.* Without citing any legal support, the Navy insists this "guide" is not a guidance, "because it is 'not the kind of document that could be enforceable through the FAA,'" Defs. Mot. p. 12, and because of a disclaimer stating that guidances are not ordinarily mandatory. In the context of the FFA, this guidance assures the public that appropriate actions, including inspections and maintenance of the remedies, will be undertaken to ensure the remedy remains protective.

The Motion argues that all of the guidances cited in the SAC provided for site-specific flexibility. Defs. Mot. p. 12. But this is a red herring. Having discarded all Tetra Tech's data, the Navy currently has data that is too limited to demonstrate protectiveness. Nearly twenty years after the Navy adopted radiological remedial goals, not a single parcel's soil associated with sanitary and stormwater sewer trenches has been fully characterized. Without site specific data, the Navy has no basis to modify the remedy to account for site-specific conditions. Thus, discussion of site-specific conditions is premature.

Furthermore, the Navy misunderstands the Third Claim, which, in addition to deviating from the guidelines, alleges the Navy completely omitted discrete steps and activities required by

the cited guidance documents. For example, the SAC repeatedly alleges that the Navy "failed" to perform the activities described in EPA guidances.[3]

For example, as to the *Comprehensive Five-Year Review Guidance* (*"FYR Guidance"*), the Navy simply did not: identify recent toxicity characteristics that the guidance states need to be investigated; use the most current toxicity data to update the risk characterization, including not mentioning or considering that EPA published new soil default preliminary remediation goals ("PRGs") in 2023, decreasing the default soil PRGs for radionuclides of concern at Hunters Point Shipyard by more than an order of magnitude. SAC ¶¶ 119(1)(a)-(e). Nor did the Navy consider the updated defaults' impact on continuing protectiveness. It failed to calculate cumulative risk from all radionuclides and chemical contaminants combined. SAC ¶ 119(1)(f). Similarly, the Navy has not detailed how institutional controls will be monitored and maintained to assure continuing protectiveness. SAC ¶ 119(1)(g). It has deferred the issue to an unknown time. SAC ¶¶ 65, 66, 73, 74, 75, 77, 119(1).

The Navy also did not do what is required by the guidance *Data Quality Objectives for Remedial Response Activities* (*"Data Quality Guidance"*). SAC ¶ 119(2). Since it has yet to start retesting in the majority of parcels and has not completed retesting in any parcels, it has not conducted comprehensive sampling to "ensure that no area of the site is overlooked," and to "provide complete coverage of the area of interest as required by the guidance." *Id.*

The guidance, *Risk Assessment Guide for Superfund, Part A*, also requires that the investigation of contamination be comprehensive, to obtain data on contaminant concentration in each source area and media. SAC ¶¶ 67, 119(3). The Navy's *Fifth Five-Year Review* is not based

---

[3] SAC ¶¶ 65, 71, 72, 75, 90, 119, 120, 122, 126, 135, 136.

on comprehensive sampling data characterizing all source areas and media; as mentioned, no Shipyard parcel has been fully characterized, so there are no comprehensive data. SAC ¶¶ 67–70. Furthermore, this guidance states that "because toxicity information may change rapidly and quickly become outdated," decision making must be based on "the most recent information available." *Id.* The Navy did not base its *Fifth Five-Year Review* on "the most recent data," such as the 2023 EPA soil default PRGs. SAC ¶¶ 74–75. Instead, the Navy continues to use the 2006 remedial goals, which were based on toxicity data that were available at that time, nearly twenty years ago. *Id.*

*Risk Assessment Guide for Superfund, Part B*, requires that remedial goals meet the CERCLA lifetime cancer risk range, between $10^{-6}$ (one in a million) and $10^{-4}$ (one in ten thousand). SAC ¶ 119(4). It also calls for deriving the risk posed by each radioactive contaminant and for each exposure pathway and then calculating total cumulative radiological risk. *Id.* It further requires that cumulative risk from all radiological and chemical contaminants combined be within the CERCLA risk range. SAC ¶¶ 84, 85, 119(4). The Navy has never calculated total cumulative risk. Instead, it has deferred the analysis until an undefined future time and has not publicly offered a reasoned explanation justifying its failure to do cumulative risk analysis. SAC ¶¶ 65, 76, 84, 85, 119(5).

The guidance *Human Health Toxicity Values in Superfund Risk Assessments*, also requires that risk be calculated using the most current toxicity data. SAC ¶ 119(5). Yet, the Navy failed to use the most current data, particularly the EPA's 2023 soil defaults. SAC ¶¶ 74–75. Nor did it justify ignoring the 2023 soil PRG defaults; the Navy's *Fifth Five-Year Review* never mentions them. SAC ¶ 119(5).

The guidance, *PRG User's Guide, Land Use Descriptions, Equations, and Technical Documentation*, allows for exposure pathways to be switched off only if "a route of exposure is considered to be unreasonable at the site, both currently and in the future." SAC ¶ 119(6). The SAC alleges that because the Navy has not established a monitoring and maintenance program for assuring future residents cannot raise food for consumption and because caps will have to be destroyed to develop the Shipyard, it is unreasonable to use gardening controls and caps to switch off routes of exposure. SAC ¶¶ 86–90, 119(6).

Like the *Risk Assessment Guide for Superfund, Part B*, the guidance *Radiation Risk Assessment at CERCLA Sites: Q & A*, requires that remedial goals be within the CERCLA risk range. SAC ¶ 119(7). If it is exceeded, action must be taken to modify the remedies to meet the acceptable range. *Id.* The Navy's *Fourth Five-Year Review* reported its risk calculation for at least one radionuclide exceeded the lower end of risk range, $10^{-4}$, but there is no evidence the Navy acted to bring the risk into the acceptable range. SAC ¶¶ 76, 78–82, 119(7).

The *Citizen's Guide to Capping* assures the public, by operation of the FFA, that FFA signatories will plan and implement a program of regular inspections, maintenance, and repair to assure that caps or covers remain protective. SAC ¶ 119(8). The Navy has failed to do so, deferring description and implementation of a program to assure the caps' continuing integrity. SAC ¶¶ 89–90, 119(8).

The *Draft Technical Guidance for RCRA/CERCLA Final Covers* also requires that caps be monitored and maintained over an assumed time period for the caps of thirty (30) years. SAC ¶ 119(9). The Navy failed to comply. SAC ¶¶ 119(1)(g), 119(9).

By pleading specific requirements of EPA guidances that the Navy failed to do entirely and that were mandatory under the FFA, the Third Claim pleads sufficient facts for the Court to deny Defendants' Motion as to that claim.

## CONCLUSION

Fo all the foregoing reasons, the Court should Deny the Motion to Dismiss the First, Second and Third Claims for Relief in the SAC. Should the Court find merit in any of Defendants' arguments, Greenaction respectfully requests leave to further amend the Complaint.

Dated: May 16, 2025                                    Respectfully submitted,

_____

Steven J. Castleman
Berkeley Law Environmental Law Clinic
354 Law Building
Berkeley, CA 94704
Tel: (510) 664-4761
Email: scastleman@clinical.law.berkeley.edu

Attorney for Plaintiff Greenaction for Health and Environmental Justice