ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
CONNER R. HUGGINS (DC Bar #90029530)
DAVID D. MITCHELL (IL Bar #6302250)
United States Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Telephone: (202) 598-9737 (Mitchell)
Fax: (202) 514-8865
david.mitchell@usdoj.gov
conner.huggins@usdoj.gov

*Counsel for Defendant*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| GREENACTION FOR HEALTH AND ENVIRONMENTAL JUSTICE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES DEPARTMENT OF THE NAVY,<br><br>　　　　　Defendant. | Case No. 3:24-cv-3899-VC-DMR<br><br>**Reply in Support of the Navy's Motion for Summary Judgment, Dkt. No. 91**<br><br>Date:　　TBD<br>Time:　　TBD<br>Location: TBD<br>Judge:　　Hon. Vince Chhabria |

DATED:  November 14, 2025

Respectfully submitted,

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

*/s/ David Mitchell*
_____
CONNER R. HUGGINS
DAVID D. MITCHELL
Environmental Defense Section

*Counsel for Defendant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.    The Review was lawful because it addressed all the factors in EPA's five-
      year review guidance ............................................................................................2

      A.    Judicial review of five-year reviews is limited to whether the
            agency's review is consistent with CERCLA's goal to assure the
            protectiveness of the remedy being implemented....................................................3

      B.    The Navy addressed all the factors in EPA's five-year review
            guidance ....................................................................................................4

II.   The Navy's discretionary decisionmaking in the Review was reasonable ........................5

      A.    The Navy's protectiveness determinations were reasonable ...................................5

      B.    The Navy's review of the radiological remedial goals was
            reasonable, and the Navy was not required to update the remedial
            goals .........................................................................................................7

      C.    Greenaction's challenge to the durable covers and homegrown
            produce ban is time-barred, misconstrues the selected remedies,
            and would impose unworkable obligations that CERCLA does not
            require .......................................................................................................8

      D.    The Navy adequately explained why potential climate effects were
            assessed through 2065..........................................................................10

III.  CERCLA does not authorize a nondiscretionary duty claim for a duty not
      yet due, unambiguously mandates review every five years, and equity tips
      sharply against any injunction here..................................................................10

CONCLUSION.........................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Amoco Prod. Co. v. Vill. of Gambell,*
    480 U.S. 531 (1987) ..................................................................................13

*Ariz. Health Care Cost Containment Sys. v. McClellan,*
    508 F.3d 1243 (9th Cir. 2007)......................................................................4

*Bear Valley Mut. Water Co. v. Salazar, No. SACV 11-01263-JVS,*
    2012 WL 5353353 (C.D. Cal. Oct. 17, 2012), *aff'd sub nom.*
    *Bear Valley Mut. Water Co. v. Jewell*, 790 F.3d 977 (9th Cir. 2015)...........4

*Citizens for Pennsylvania's Future v. Wheeler,*
    469 F. Supp. 3d 920 (N.D. Cal. 2020) .......................................................11

*Coos Cnty. Bd. of Cnty. Comm'rs v. Kempthorne,*
    531 F.3d 792 (9th Cir. 2008)......................................................................11

*Dist. of Columbia v. Heller,*
    554 U.S. 570 (2008) ....................................................................................4

*FAA v. Cooper,*
    566 U.S. 284 (2012) ..............................................................................11, 12

*Fort Ord Toxics Project, Inc. v. Cal. EPA,*
    189 F.3d 828 (9th Cir. 1999)........................................................................3

*Giovanni v. Dep't of the Navy,*
    906 F.3d 94 (3d Cir. 2018)...........................................................................3

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,*
    530 U.S. 1 (2000) ......................................................................................11

*Krayzman v. iStockPhoto LP,*
    No. 24-CV-03086-VC, 2024 WL 4658107 (N.D. Cal. Oct. 3, 2024)..........11

*LAJIM, LLC v. Gen. Elec. Co.,*
    917 F.3d 933 (7th Cir. 2019).......................................................................13

*N. Cheyenne Tribe v. Norton,*
    503 F.3d 836 (9th Cir. 2007).......................................................................14

*Orkin v. Taylor,*
    487 F.3d 734 (9th Cir. 2007).....................................................................3, 4

*Ramirez v. Ghilotti Bros. Inc.,*
    941 F. Supp. 2d 1197 (N.D. Cal. 2013) .....................................................13

*Russello v. United States*,
464 U.S. 16 (1983) ........................................................................................................4

*S. Nev. Shell Dealers Ass'n v. Shell Oil Co.*,
725 F. Supp. 1104 (D. Nev. 1989) .............................................................................13

*Walsh v. Nev. Dep't of Hum. Res.*,
471 F.3d 1033, 1037 (9th Cir. 2006)..........................................................................11

*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982) .........................................................................................12, 13, 14

**Statutes**

42 U.S.C. § 9613(h) ...........................................................................................................3
42 U.S.C. § 9621(c) .........................................................................................3, 4, 5, 6, 12
42 U.S.C. § 9659(a)(1).....................................................................................................10
42 U.S.C. § 9659(a)(2).............................................................................................2, 10, 11
42 U.S.C. § 9659(c) ..........................................................................................................12

**Regulations**

40 C.F.R. § 300.430(e)(2)(i) ..............................................................................................5
40 C.F.R. § 300.435(a)........................................................................................................9

Nothing in Greenaction's opposition to the Navy's motion for summary judgment refutes the Navy's arguments, and this Court should grant summary judgment in favor of the Navy as to the two claims remaining in this case.

For claim four, the Navy's fifth five-year review ("Review") of the remedial actions at the former Hunters Point Naval Shipyard ("Hunters Point") was thorough, addressed all the factors from EPA's five-year review guidance, and included substantial public participation and regulator coordination. Whether under CERCLA's limited standard of review, or under a broader review of the Navy's discretionary decisionmaking, the Review was lawful and reasonable. *See* Memorandum and Point of Authorities in Support of the Navy's Motion for Summary Judgment ("Mot."), Dkt. No. 91-1.

Greenaction insists that the Navy must start the CERCLA process over and that the Court should review the Navy's discretionary decisionmaking. *See* Greenaction's Opposition to the Navy's Motion for Summary Judgment ("Opp."), Dkt. No. 92. But a five-year review is just that – a review. And the scope of judicial review is properly limited by the law Congress provided for review, in recognition of agency discretion, direct Congressional oversight, and insulation of response actions from judicial review. Greenaction's arguments otherwise ignore CERCLA's text, structure, and provisions for limited review.

Greenaction's specific assertions of error are wrong on the record and the law. Greenaction contends the Navy failed to do assessments that the Navy in fact completed and published in the Review (remedial goal review using updated risk information) and will do again (radiological and cumulative risk based on site data); brings time-barred challenges to remedial actions selected decades ago (durable covers and homegrown produce ban); demands updated remedial goals that

CERCLA does not require, and claims the Navy failed to explain the climate assessment target year dates that are well-reasoned in the Review.

Greenaction's arguments regarding the Review are baseless and, at times, internally inconsistent. For example, Greenaction demands a cumulative risk review based on real-world data but faults the Navy for deferring review to finish collecting the data. Greenaction also argues that the Navy must be more thorough but faults the Navy for taking the time necessary to do a thorough review with substantial public participation.

Continuing to prefer a faster review over a thorough one, Greenaction requests for claim two an order directing the timing of the forthcoming sixth five-year review. Greenaction made clear in its opposition that claim two is a CERCLA nondiscretionary duty claim under 42 U.S.C. § 9659(a)(2), which does not provide a right to sue to compel performance of a duty not yet due. Greenaction also ignores that CERCLA is silent and therefore ambiguous as to the deadline for a review when the prior review is late. That ambiguity must be resolved in favor of the Navy. And Greenaction did not respond to the Navy's arguments that the Court should not direct the timing of the sixth five-year review. Injunctive relief is not automatic even when authorized by statute, and Greenaction's silence is acquiescence. Still, the equities tip sharply in favor of allowing the Navy to do a thorough review with substantial public participation and regulatory coordination in five years, instead of rushing the review in four.

I.    **The Review was lawful because it addressed all the factors in EPA's five-year review guidance.**

The Navy thoroughly addressed all the factors in EPA's five-year review guidance, which is sufficient to uphold the Review. Mot. 12-20. Greenaction asks this Court to review the Navy's discretionary decisionmaking and protests that the Navy did not consider all the factors from EPA's guidance. Opp. 2-7, 18-20. Both arguments are wrong.

**A. Judicial review of five-year reviews is limited to whether the agency's review is consistent with CERCLA's goal to assure the protectiveness of the remedy being implemented.**

CERCLA's text, structure, and objectives make clear that judicial review of a five-year review is limited to whether the agency completed its review consistent with CERCLA's statutory goal to assure the protectiveness of the remedy being implemented. Mot. 12-16. CERCLA's five-year review provision provides maximum agency discretion without any substantive standards for review and provides for direct Congressional oversight. 42 U.S.C. § 9621(c); Mot. 12-15. CERCLA also insulates implementation of response actions from judicial review in multiple ways. *See* 42 U.S.C. § 9613(h), (j); Mot. 15-16. Indeed, Greenaction could not even bring this lawsuit if the ongoing response actions were not being conducted at a federal facility (or in a different federal court of appeals circuit). Mot. 15-16; *see Fort Ord Toxics Project, Inc. v. Cal. EPA*, 189 F.3d 828, 833-34 (9th Cir. 1999); *Giovanni v. Dep't of the Navy*, 906 F.3d 94, 115-16 (3d Cir. 2018).

Greenaction largely ignores CERCLA's text, structure, and the limited nature of its review provisions. Opp. 2-7. Instead, Greenaction doubles down on its argument that the Navy must start over and apply the remedy selection process as part of a five-year review. *Id*. at 5-6. Greenaction ignores the discretion CERCLA provides the agency and CERCLA's review limiting provisions, and discounts the Congressional oversight provided in the five-year review provision. *Id*. at 2-6. Instead, Greenaction focuses myopically on the first sentence of Section 9621(c) in arguing that the five-year review provision imposes the same process and substantive standards as remedy selection. *Id.* But Section 9621(c) does not provide a substantive standard; it requires review of certain remedial actions and specifies the statutory purpose of the five-year review. 42 U.S.C. § 9621(c); Mot. 13-14. Statutory purpose provisions can aid in the interpretation of substantive standards and criteria, but do not impose substantive standards or criteria themselves. *See Orkin*

*v. Taylor*, 487 F.3d 734, 739 (9th Cir. 2007) (finding statutory objective provisions do not impose substantive standards); *Bear Valley Mut. Water Co. v. Salazar*, No. SACV 11-01263-JVS, 2012 WL 5353353, at *9 (C.D. Cal. Oct. 17, 2012) (same), *aff'd sub nom. Bear Valley Mut. Water Co. v. Jewell*, 790 F.3d 977 (9th Cir. 2015); *cf. Dist. of Columbia v. Heller*, 554 U.S. 570, 578 (2008) (prefatory clauses do "not limit or expand the scope of the operative clause").

Courts must give meaning to Congress' choice to specify the purpose of five-year reviews rather than impose substantive standards or criteria. *See* 42 U.S.C. § 9621(c). For "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983); *see also Ariz. Health Care Cost Containment Sys. v. McClellan*, 508 F.3d 1243, 1250 (9th Cir. 2007). Here, that means judicial review is limited to whether the Review was consistent with the statutory goal. Mot. 12-16.

### B. The Navy addressed all the factors in EPA's five-year review guidance.

The Review was lawful because the Navy addressed all the factors in EPA's five-year review guidance. *Id*. at 16-20. Greenaction insists that the Navy did not investigate: (1) whether exposure assumptions, toxicity data and cleanup levels are still valid, and (2) whether any other information could question the protectiveness of the remedy. Opp. 19-20. That is plainly wrong. The Navy thoroughly considered these questions. *See* Mot. 9-10, 19-20.

Greenaction specifically asserts that the Navy did not consider EPA's 2023 toxicity information for radionuclides and failed to modify remedial goal risk estimates accordingly. Opp. 10-12, 19-20. But the Navy did consider and estimate radionuclide risk based on EPA's most-recent toxicity information. Mot. 10, 22-23; AR_0000570. And the Navy did so conservatively

assuming Hunters Point radionuclide concentrations are at remedial goal levels at ground level throughout the entire site.  *Id.*; AR_0001167.

What Greenaction really demands is that the Navy start the CERCLA process over with lower *preliminary remedial goals*.  Opp. 10-12, 18-20.  Preliminary remedial goals are developed during the CERCLA process to select a remedial action (cleanup plan).  40 C.F.R. § 300.430(e)(2)(i).  The goals are refined through the CERCLA process and finalized in the remedial action selected.  *Id.*  Five-year reviews occur after the remedial action is selected.  *See* 42 U.S.C. § 9621(c).  The Navy is not required–and it makes no sense–to go back to the beginning of the CERCLA remedial process as part of a five-year review.

## II.    The Navy's discretionary decisionmaking in the Review was reasonable.

Even if this Court reviews the Navy's findings and recommendations, the Review was reasonable.  The Navy's process was robust, its analysis thorough, and its findings and recommendations well explained in the 1,168-page report.  *See* AR_0000001-1169.  Greenaction's meritless arguments rehashed from its summary judgment motion are equally inadequate here.

### A.   The Navy's protectiveness determinations were reasonable.

The Navy's protectiveness determinations were made after review of every relevant parcel and consistent with EPA guidance.  Mot. 21-22.  The Review identified radiological sampling fraud as an issue that could question the protectiveness of the remedies at affected parcels and recommended that the Navy complete the ongoing radiological retesting.  AR_0000034; *see, e.g.*, AR_0000220 (parcel G).  Meanwhile, access controls at the site prevent exposure to any unacceptable risks to human health, which led to a short-term protectiveness determination at

parcels where radiological uncertainty drove the protectiveness determination.[1]  Mot. 22.  Those determinations were lawful and reasonable.  *Id.*

Greenaction would require all the parcels with radiological uncertainty to receive "not protective" or "protectiveness deferred" determinations rather than "short-term protective" based on restricted site access.  Opp. 9.  Protectiveness determinations to characterize the status of remedy protectiveness in a CERCLA five-year review derive from EPA's five-year review guidance, not CERCLA.  Mot. 21.  Greenaction's claim based on violations of CERCLA Section 9621(c) fails for that reason alone.  And Greenaction is wrong in any event.  Under EPA's guidance, where there is information that could affect long-term protectiveness (radiological sampling fraud here), but the remedy is operating and risks are controlled in the short term (*e.g.*, access controls prevent human exposure here), "short-term protective" is an appropriate determination.  AR_0206826-206830.

Even if the Navy made the protectiveness determinations that Greenaction believes are appropriate, there would be no practical relief the Court could order because a different determination would not change the recommendation to finish the radiological retesting.  The appropriate recommendation and action to address uncertainty due to radiological sampling fraud still would be to finish the ongoing retesting to make data-driven, reasonable decisions about any future response actions.  EPA and California regulators are aware of this issue, and the Navy is implementing the appropriate response action: radiological retesting.  Mot. 8, 10, 22.

---

[1] The protectiveness determinations at some of the parcels with radiological uncertainty were not "short-term protective" because the protectiveness determinations were based on factors unrelated to radiological conditions.  *See, e.g.*, AR_0000019 (noting "protectiveness deferred" determination for parcel B-2 due to the performance of the groundwater remedy for mercury).

**B. The Navy's review of the radiological remedial goals was reasonable, and the Navy was not required to update the remedial goals.**

The Navy adequately reviewed the radiological remedial goals using EPA's most recent toxicity information. The updated risk estimates were well below the National Contingency Plan's generally acceptable range, except that thorium-232 and the sum of all radiological risks were marginally outside that range. Mot. 23. It was reasonable for the Navy to conclude that the remedial goals remain protective at Hunters Point because the Navy conservatively assumed radionuclide concentrations are at remedial goal levels at ground level throughout the entire site. *Id*. at 23-24. But contaminated soils above the remedial goals are excavated and disposed of off-site and most of the site is covered with up to four feet of soil or asphalt. *Id.*; AR_0000128, 130, 134, 192, 202, 246, 248, 250, 316, 318, 320, 213318. Thus, the Navy significantly overestimated risk. Mot. 23-24. And the Navy will do another risk evaluation for radionuclides and cumulative risk for all contaminants at Hunters Point based on real world data. *Id.* But the Navy needs the data first. *Id.*

Greenaction faults the Navy's conclusions but ignores the conservative assumptions underlying the Navy's risk estimates. Opp. 10. Greenaction also disregards the Navy's plans to demonstrate protectiveness for radionuclides and total cumulative risk using the site-specific data that the Navy is currently gathering. *Id*. at 10, 13-15. At the same time, Greenaction demands that the Navy prove Hunters Point is safe using real-world data. *Id*. at 17 ("[T]he crux of Greenaction's challenge is that the Navy has failed to live up to its ongoing obligation to implement a protective cleanup using real-world data to assess real-world risk."). That is what the Navy is doing. *See* Mot. 24.

Greenaction also faults the Navy for excluding from the radiological risk estimate homegrown produce as an exposure pathway. Opp. 15. The Navy reasonably did so because the

remedies selected prohibit homegrown produce, which will be enforced with deed and covenant restrictions and compliance inspections. *See infra* 9-10; Mot. 26. Homegrown produce therefore is not a likely exposure pathway. Greenaction attacks the homegrown produce ban as insufficiently protective and speculates that it will be ineffective. Opp. 15-16. That time-barred challenge to the selected remedies is meritless. *See infra* 9-10.

Finally, Greenaction insists on updated radiological remedial goals. Opp. 10-12. But there was no reason for the Navy to update the goals because the Navy reasonably found that the current goals remain protective at Hunters Point and will demonstrate protectiveness using real world data. Mot 24. Greenaction again erroneously argues that the Navy did not use EPA's most recent toxicity data to estimate radiological risk. Opp. 12. The Navy did use EPA's most recent data. *See supra* 4-5. And contrary to Greenaction's claims, the Navy is not required to start with new preliminary remedial goals in a five-year review. *See supra* 5.

### C. Greenaction's challenge to the durable covers and homegrown produce ban is time-barred, misconstrues the selected remedies, and would impose unworkable obligations that CERCLA does not require.

The remedial actions selected at Hunters Point use durable covers and a homegrown produce ban (among other institutional controls and remedy components) to protect human health. Mot. 25. The Navy assessed the effectiveness of these remedy components in the Review and determined that they are performing as intended. *Id.* Therefore, the Navy's review of them was reasonable and lawful. *Id.*

Greenaction does not contest the Navy's findings or conclusions in the Review. Opp. 14-18. And Greenaction does not identify any change in circumstances or implementation issues that would necessitate reconsidering these remedy components. *Id.* Instead, Greenaction argues that the Navy has not proven that the redevelopment of Hunters Point will be safe and that the

homegrown produce ban will be ineffective.  *Id.*  These are time-barred challenges to the remedies selected that include measures that address Greenaction's concerns.  Mot. 25-26.

The remedies require that construction activities be conducted under regulatory oversight and other institutional controls restrictions to ensure redevelopment is safe.  *Id.* at 26.  Greenaction challenges this remedy component as inadequate.  Opp. 14.  As this Court has already held, that claim is time-barred.  Order, Dkt. No. 44 at 4; *see also* Mot. 25-26.

And Greenaction's insistence that the Navy identify specific physical protections in the Review is unworkable, ignores practical considerations, and is inconsistent with CERCLA. Regulatory oversight requirements and specific safety measures for construction depend on a future redevelopment project (if any) that does not exist yet.  What is necessary to build a park or community center would differ from building multi-story housing.  So those details are not specified in the selected remedies and certainly are not developed in a five-year *review*.  Even for the remedial actions, the technical design of the remedial action occurs after remedy selection, not as part of the selection process.  *See* 40 C.F.R. § 300.435(a).  There is nothing in CERCLA that requires the Navy to guess in a five-year review what safety measures may be necessary someday for future construction at Hunters Point and describe specific regulatory oversight plans before the remedial actions are complete, parcels are transferred out of federal ownership, and a redevelopment project is designed.  Greenaction provides only its opinion, not legal authority, in support of its unworkable position that is inconsistent with CERCLA.  *See* Opp. 14.

Greenaction's attack on the homegrown produce ban also fails.  The ban is part of the selected remedies, and so are the deed restrictions, covenants to restrict the use of property, and compliance inspections that will enforce the ban after property transfer.  Mot. 26.  Greenaction tries to avoid the statute of limitations for its time-barred challenge by complaining that the deed

and covenant restrictions are not in place yet. Opp. 15. But that is how the remedy is designed. Deed and covenant restrictions will be implemented when the property is transferred out of federal ownership and compliance inspections will continue. AR_0000031, 54. Until then, land use restrictions like the homegrown produce ban are met through access controls (e.g., fences). AR_0000031. Greenaction's challenge to these remedy components thus is time-barred and otherwise meritless.[2] Mot. 25-26.

### D. The Navy adequately explained why potential climate effects were assessed through 2065.

The Navy's climate resilience assessment evaluated climate-related risks that may arise in 2035 and 2065. *Id*. at 26. The Navy chose these years to determine whether planning work for further response actions was needed now. *Id.* Greenaction's assertion that the Navy did not explain the target time frame is plainly wrong. That aside, the 2035 and 2065 target years were reasonable, and so was the Navy's decision to do more thorough parcel-specific studies later using site-specific data. *Id*. at 26-27.

### III. CERCLA does not authorize a nondiscretionary duty claim for a duty not yet due, unambiguously mandates review every five years, and equity tips sharply against any injunction here.

Greenaction's opposition makes crystal clear that claim two, seeking an order directing the timing of the Navy's sixth five-year review, is a nondiscretionary duty claim brought under Section 9659(a)(2), not a CERCLA violation claim under Section 9659(a)(1) and not a challenge to the Navy's five-year review policy. Opp. 20-23. Greenaction did not respond to the Navy's arguments that Section 9659(a)(1) does not apply here and that Greenaction cannot challenge the Navy's five-

---

[2] Greenaction's argument that it was unreasonable for the Navy to exclude risks from homegrown produce for the review of the radiological remedial goals is relevant to the review of those goals, not the adequacy of the institutional controls, and therefore discussed above. *See supra* 7-8.

year review policy in CERCLA citizen suit. *Id.* Any such arguments thus are forfeited. *Krayzman v. iStockPhoto LP*, No. 24-CV-03086-VC, 2024 WL 4658107, at *1 (N.D. Cal. Oct. 3, 2024) (citing *Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006)).

Section 9659(a)(2) does not authorize Greenaction's claim as to the future sixth five-year review. The plain language of Section 9659(a)(2) does not provide a cause of action to challenge a duty not yet due. Mot. 28. CERCLA provides a right to sue "where there *is* alleged a failure . . . to perform any act or duty under [CERCLA] . . . which is not discretionary . . . ." 42 U.S.C. § 9659(a)(2) (emphasis added). The plain language and syntax require the existence of a failure to perform the required duty, not potential future failures. "Where there is alleged a failure . . . to perform . . . [a nondiscretionary duty]," *id.,* cannot mean (possibly) failing to perform a duty in the future. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (internal quotations omitted). Thus, no court has found that a nondiscretionary duty claim is available for a duty not yet due.

Moreover, Section 9659(a)(2)'s text, which applies only to the United States, and operates as a limited sovereign immunity waiver, cannot be interpreted to provide a claim (or waive sovereign immunity) for a possible future failure to perform a nondiscretionary duty. 42 U.S.C. § 9659(a)(2); *see Coos Cnty. Bd. of Cnty. Comm'rs v. Kempthorne*, 531 F.3d 792, 801 (9th Cir. 2008); *Citizens for Pennsylvania's Future v. Wheeler*, 469 F. Supp. 3d 920, 932 (N.D. Cal. 2020) (noting that "citizen-suit provisions operate in the [] context of federal sovereign immunity"). Sovereign immunity waivers must be read strictly with all ambiguities resolved in favor of immunity. *FAA v. Cooper*, 566 U.S. 284, 290 (2012). That means immunity is not waived if there

is a plausible argument favoring immunity.  *Id*. at 290-91.  The Navy's sixth five-year review is due years from now.  Therefore, Greenaction's nondiscretionary duty claim must be dismissed.[3]

This Court denied the Navy's motion to dismiss claim two based on allegations that "the Navy has a 'past and ongoing policy' of improperly setting deadlines for the five-year reviews."  Order, Dkt No. 77, at 2.  Greenaction's opposition explicitly states that claim two does not challenge the Navy's five-year review policy.  Opp. 22.  Any avenue that this Court opened for claim two to proceed, Greenaction closed in its opposition.  *Id*.  In any event, any such claim is not cognizable under CERCLA's citizen-suit provision, which Greenaction concedes.  Mot. 29-30; *supra* 10-11.

On the merits, Section 9621(c) does not specify when a review is due if the prior review is late.  That ambiguity must be resolved in favor of the Navy, which is consistent with Congress' policy choice to require review every five years.  Mot. 28.  The sixth five-year review is unambiguously due in five years, not four.  *Id.*; 42 U.S.C. § 9621(c).  Thus, Greenaction is wrong in arguing that the sixth five-year review is due in July 2028.

Finally, the Court should not set a deadline for the timing of the sixth five-year review even if the Court anticipates that the Navy may not complete that review when Greenaction asserts it is due.  CERCLA provides federal district courts the authority to "order the President or other officer to perform the [nondiscretionary] act or duty concerned."  42 U.S.C. § 9659(c).  But it does not mandate any such remedy.  *Id*.  Injunctions are equitable remedies that are not "issue[d] as of course."  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982).  Instead, courts must balance the interests of the parties and "arrive at a 'nice adjustment and reconciliation' between

---

[3] Greenaction continues to argue that claim two also challenges the fourth five-year review as late. Opp. 20, 22.  The Court already dismissed that claim as moot.  Dkt. No. 44 at 2-3; Mot. 27.

competing claims." *Id.* at 312. And "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* These principles and remedial limits, which apply to federal courts sitting in equity, also apply to traditional equitable relief, like injunctions, made available in environmental statutes. *Id.* at 320 (holding that the Clean Water Act did not displace limits on federal courts' authority to fashion equitable relief); *Amoco Prod. Co. v. Vill. of Gambell,* 480 U.S. 531, 545 (1987) (same for the National Environmental Policy Act); *LAJIM, LLC v. Gen. Elec. Co.*, 917 F.3d 933, 943-44 (7th Cir. 2019) (same for the Resource Conservation and Recovery Act).

Greenaction did not respond to the Navy's argument that the Court should not order the timing of the sixth five-year review. Opp. 20-23. The Navy's argument therefore is unopposed, and the Court should decline to issue such an order on that basis. *See Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 n.7 (N.D. Cal. 2013) (collecting cases explaining that failing to respond to an argument in opposition concedes the issue); *S. Nev. Shell Dealers Ass'n v. Shell Oil Co.,* 725 F. Supp. 1104, 1109 (D. Nev. 1989).

Even so, the balance of the equities tips sharply in favor of the Navy here. An injunction is not necessary to compel the Navy to complete the sixth five-year review. The Navy has worked diligently to do thorough five-year reviews. Mot. 30. The substantial public interest in the Hunters Point cleanup and coordination with EPA and California regulators, coupled with the complexity of the site and response actions, make the five-year reviews substantial, time-consuming projects at Hunters Point. *Id.* And they compete with implementation of the response actions for resources and staffing. *Id.* The Navy hopes to continue doing thorough reviews with robust public participation and regulator coordination. *Id.*

Greenaction argues nothing in response but a potential technical failure to perform a future CERCLA nondiscretionary duty. Opp. 20-22. That is fatal. An injunction requires a showing of irreparable harm and balancing the equities between the parties considering the public interest. *Weinberger,* 456 U.S. at 312; *N. Cheyenne Tribe v. Norton*, 503 F.3d 836, 843 (9th Cir. 2007). Greenaction makes no effort to explain (or prove) how it will be irreparably harmed without an injunction, or what would be gained by forcing the Navy to complete the sixth five-year review in less than five years. Opp. 20-22.

The equities support allowing the Navy to continue to provide robust public participation, to engage in meaningful coordination with EPA and California regulators, and to produce a thorough sixth five-year review. At the same time, the Navy can continue to work diligently on the response actions, including the radiological retesting, to determine whether site conditions are safe or require further response actions. Traditional principles (and limits) of equity do not favor an order directing the timing of the sixth five-year review. *Weinberger*, 456 U.S. at 312. Thus, the Court should not issue one.

## CONCLUSION

For these reasons and those in the Navy's motion for summary judgment, the Court should grant the Navy's motion, deny Greenaction's motion, and enter summary judgment for the Navy.